Foster & Foster *v.* Wallace.

| 2 | 231 |
|---|---|
| 42a | 298 |

| 2 | 231 |
|---|---|
| 132 | 628 |

| 2 | 231 |
|---|---|
| 78a | 368 |

(231)                FOSTER & FOSTER *v.* WALLACE.

1. A creditor is a competent witness to increase a solvent estate of a deceased person. (Note *a.*)
2. The fact that A. was merely a security in a bond, may be proven by any witness who knows the fact, as well as by a subscribing witness to the bond itself.
3. Parol evidence will be admitted to establish the indebtedness of a fraudulent conveyancer, and it is not necessary to produce the bonds or promissory note, if such evidence of the debt be in existence.
4. The fact of continuing in possession of slaves after the sale, does per se constitute the sale fraudulent and void as to creditors. (Note *b.*)

APPEAL from Howard Circuit Court.

TOMPKINS, J., delivered the opinion of the Court.

Wallace sued the Fosters, appellants, as executors of Charles Simmons, in an action of debt on a bond made by Simmons on the 18th day of February, 1824, for a sum of money to be paid on the 1st day of May, 1826. The defendants pleaded 1st, *non est factum ;* 2d, *ne unques executors ;* and 3d, that Simmons died intestate, and that before the commencement of this suit, Robert Wash was, and ever since has been, and still is, Simmons' administrator. Upon the first and second pleas the plaintiff took issue, and to the third plea replied, that the defendants, after the death of Simmons, and before the grant of administration to Wash, took and converted to their own use certain personal property, being part of the estate of Simmons at the time of his death, and that they thereby became executors of their own wrong. Upon this replication issue was taken, and on these issues the cause was tried by a jury. Verdict, on all the issues, was found for the plaintiff, and judgment thereon rendered.

On the trial, it appeared that Simmons was domiciled and died intestate in Hardiman county, in the State of Tennessee, in August, 1824, and that administration of his effects was granted in that State on the third Monday in February, 1825, and afterwards, on 11th day of April, 1827, was granted to Robert Wash. The plaintiff rested his whole right of recovery upon the fact that the defendants had intermeddled with some slaves, the property of Simmons, and thereby had become executors of their own wrong. The slaves charged to be thus intermeddled with, were named John, Tom, Joe, Anthony, Mary, and Sal and her three children, viz: March, Ann and Martha.

To these slaves the defendants set up title in themselves, which title the plaintiff (232) insisted was fraudulent against Simmons' creditors. The plaintiff gave evidence that Simmons formerly resided in this State, and had the said slaves in his possession part of the time that he resided here; that in November, 1823, he removed to Hardiman county, in the State of Tennessee, and at the time of his death had all the slaves there in possession, except Joe; that after his death, and before any grant of letters of administration of his estate, the defendants went from this State to Simmons' late residence in Tennessee, and took the slaves into their possession, and brought them to this State, and claimed and used them as their own. The defendants gave evidence that the slaves Mary and Sal, and the issue of Sal, were and always had been the property of the defendant George, and that Simmons held them under a loan from the said George, who was the father-in-law of Simmons. It was also in evidence on the part of the defendants, that in the summer of the year 1823, the defendant, Josiah, purchased from Simmons two of the said slaves, viz: Tom and John, and that the two defendants purchased from him the slaves Joe and Anthony. Bills of sale for all were produced, except for Joe, and for him none had been given. The plaintiff gave evidence that when Simmons removed to Tennessee he took the said slaves with him; that at the time of the sale of said slaves he was greatly indebted; that Simmons continued in possession of the property after he had sold it; that Simmons had been five years in possession of the slaves Mary and Sal, and the issue of Sal, and that no writing declaring the loan of them to Simmons had been recorded. The defendants gave evidence controverting these facts, contending that the sales were in good faith, and for full and valuable consideration, and that the possession was not retained by Simmons, that he (S.) had at the time of the sales other property sufficient to satisfy all his debts.

On the trial, John Simmons, brother of the deceased, was offered as a witness by the plaintiff, who was objected to by the defendants, because the deceased having left no issue, the witness was interested in having the debts paid out of property which could not be reached by representatives of said deceased. For the purpose of showing the consideration given for the slaves Joe and Anthony, the defendants proved that Gaw's Ex'ors had recovered judgment against Simmons, and the defendant, Josiah, for $131, and that Josiah had satisfied this judgment; and then offered to prove that the said defendant had executed the writing merely as security of Simmons. This evidence the Court refused to allow unless the non-production of the subscribing witness to the writing was accounted for, and it was rejected. To prove that Simmons was indebted before the time of the several conveyances to the defendants, the plaintiff introduced J. Kingsbury to prove that before the date of these conveyances he held Simmons' bond for $200 or $300, and that on the 19th February, 1824, Simmons paid part of the debt, took up his bond, and together with another

Foster and Foster v. Wallace.

person as security, executed to Kingsbury two other bonds for $50 each, the residue of the original debt, and that his security had, since Simmons' death, paid these two bonds. The plaintiff not accounting for the non-production of the bonds, the defendants objected to the testimony, but the objection was overruled and the testimony admitted.

The plaintiff also, for the same purpose, proved and read to the jury an obligation made by Simmons on the 16th day of February, 1824, payable to Peyton Nowlin, for $441 00, and produced said Nowlin as a witness to prove that W. F. Edwards, prior to the year 1823, held an obligation on Simmons, payable to himself, for a considerable sum of money.; that after Edwards' death, this obligation came to the hands of Nowlin as administrator, and that in February, 1824, Nowlin delivered it up to Simmons, and received in lieu of it the aforesaid bond. This testimony was objected to for the same reason as that last before mentioned, but the objection was overruled. On the trial, the plaintiff, to show that the defendants held Simmons' bonds for the payment of large sums of money at the time of his death, introduced John Simmons, who testified that in November, 1824, he was in conversation with George S. Foster, at the late residence of Charles Simmons, in Tennessee, and that said Foster then read to the witness three notes from Charles Simmons, payable to the defendants, for $800 or $1000 each. The plaintiff then produced a copy of the record of a judgment of the Hardiman Court of Common Pleas and Quarter Sessions, in favor of George S. Foster, against the administrators of Charles Simmons, on a bond made by Simmons to Foster, dated 9th November, 1823, for $1000, and at the same time proved that the defendants had placed a transcript of the record of the judgment in the hands of an attorney, and authorized him to procure an allowance of the said claim in Howard County Court against R. Wash as administrator of Simmons, and that said attorney had made out a copy of said transcript and delivered it to Wash as notice of said (234) Foster's claim against Simmons' estate, and that the paper now produced was the copy which he delivered to Wash. The reading of the copy was objected to by the defendants, and the objection overruled by the Court.

The plaintiff then produced another writing, purporting to be a copy of the transcript of a record of a judgment of the same Court, in favor of Josiah Foster, against the administrators of the same, and for the same purpose as the former: the reading of which was in like manner objected to by the defendants, and the objection overruled. The plaintiff then produced the depositions of Robert Thrasher, H. C. Warren and William Ramsay. The deposition of Thrasher went to show that Simmons exercised the rights of ownership over the property contended for. Ramsay's was to the same purpose, as was the greater part of Warren's. Warren stated, that in conversation with Simmons, he had told him that it was understood that George S. Foster of Missouri held a lien on his property, and that Simmons replied it was a damned lie, that his property was his own, and no man had a lien on it. During the progress of the trial, the defendants, having previously given in evidence that Simmons' intention of removing to Tennessee was a matter of notoriety in the county long before his departure, the plaintiff produced a witness to prove that he met Simmons on his way to Tennessee, and that S. told him he was only going to the Potosi Mines, and meant to return. This testimony was objected to, but admitted by the Court. The Court instructed the jury:

First. If they find that the defendants intermeddled with the property of the deceased before the appointment of an administrator, then they should find for the plain-

Foster and Foster *v.* Wallace.

tiff the sum due him from Simmons, although the property might not have been of the value of the debt.

Second. If they find that the defendants claimed the property by a conveyance under an absolute bill of sale from Simmons to them, and that the possession of the property did not accompany and follow said conveyance ; and that the plaintiff was a creditor of Simmons at the time of such conveyance, and still is such creditor, that then such conveyance is void as against the plaintiff.

The defendants then moved the Court to instruct the jury :

First. That if the defendants' bills of sale were intended between the parties thereto only as a mortgage or indemnity to the defendants for money loaned or for securityships entered into, and such sales were in fact bona fide, such intention or agreement between the parties did not *per se* constitute such sale fraudulent and void, as against Simmons' creditors.

(235)   Second. That if Simmons died intestate, and after his death and before the commencement of this suit, administration of his estate was legally granted to R. Wash in this State, who ever since has been and still is administrator of such estate, that then the defendants are not chargeable as executors of their own wrong.

Third. That if the defendants had color of title to the property with which they intermeddled, they cannot be charged as executors of their own wrong.

Fourth. That if Simmons executed the bills of sale to the defendants to secure them for money loaned him by the defendants, and to secure them for their liability as security for Simmons, that then they cannot be charged as executors of their own wrong for taking such property.

Fifth. That if Simmons, at the time of his death, had his domicil in the State of Tennessee, and there died intestate, and administration of his estate was there granted in that State, which still remains in full force, and after such grant of administration the defendants took any of the property of Simmons in the State of Tennessee and brought it to the State of Missouri, that such taking and bringing away do not constitute them executors of their own wrong.

All which instructions were refused by the Court, and the following instructions were given :

First. That the declarations of Simmons made before or after the sale to the defendants, and which had been given in evidence, were good evidence to show the nature of Simmons' possession or claim to the property, but not to invalidate the title of the defendants.

Second. That if the defendants took the property under a fair claim of right, they are not chargeable as executors of their own wrong.

The defendants claim a reversal of the judgment for the following reasons, viz :

First. Because John Simmons was admitted as a competent witness for the plaintiff.

Second. Because H. C. Warren was admitted, &c.

Third. Because the defendants were not permitted to prove that Josiah Foster was merely security of Simmons in the bond to Gaw's executors, unless they produced or accounted for the non-production of the subscribing witness.

Fourth. Because parol evidence of Simmons' bond to Kingsbury was admitted in evidence.

Fifth. Because parol evidence of the two bonds made by S. and his security, was admitted, &c.

Foster and Foster *v.* Wallace.

Sixth. Because parol evidence of the bond of S. to Wm. F. Edwards was admitted, &c.

(236) Seventh. Because the copy of the transcript of the record of the judgment of the Hardiman Court of Common Pleas and Quarter Sessions, between George S. Foster, plaintiff, and the administrators of Simmons, defendants, was admitted, &c.

Eighth. Because the copy of the transcript of the record of the judgment of the Hardiman Court of Common Pleas and Quarter Sessions, between Josiah Foster, plaintiff, and the administrators of Charles Simmons, defendants, was admitted, &c.

Ninth. Because Thrasher's deposition was admitted, &c.

Tenth. Because Warren's deposition was admitted.

Eleventh. Because Ramsay's deposition was admitted, &c.

Twelfth. Because Donohoe's evidence of Simmons' declarations as to Simmons' intentions of going to the Mines was admitted, &c.

Thirteenth. Because the Court directed the jury that Simmons' retaining possession of the slaves after the sale, did *per se* constitute the sale fraudulent and void.

Fourteenth. Because the Court refused to instruct the jury, that the understanding or agreement between Simmons and the defendants, that the latter should hold the slaves sold to them only as a mortgage or indemnity to them, did not *per se* constitute the sales void as to creditors of Simmons, if such sales were in point of fact bona fide.

Fifteenth. Because the Court directed the jury, that if the defendants took possession of the property of Simmons after his death, and before any grant of letters of administration, and claimed and used it as their own, or sold or disposed of it as their own, they ought to find for the plaintiff on the plea of *ne unques executors.*

Sixteenth. Because the Court refused to instruct the jury, that if they found that Simmons was domiciled and died intestate in Tennessee, with the property then in his possession, and that administration was granted in Tennessee, and then the defendants took the property in Tennesse and brought it to this State, claiming it and using it as their own, they are not chargeable as executors of their own wrong.

First. John Simmons was the brother of Charles Simmons, the intestate. This point will be decided for the appellee; the Court being divided in opinion.

Second. H. C. Warren was a creditor, and it being assumed that Simmons, the intestate, was insolvent, it is contended that Warren was therefore an incompetent witness. The authorities cited go to show that a creditor is an incompetent witness (237) to increase the funds of a bankrupt. The condition of a creditor of an insolvent, appears to be somewhat different from that of a creditor of a bankrupt; a bankrupt is brought into that condition involuntarily, that is by the act of others, and the law then takes possession of his property for the benefit of his creditors. An insolvent becomes so voluntarily ; but it is only assumed that Simmons' estate is insufficient to pay his debts ; for any thing shown here there may be property enough to pay the debts of the deceased, and it is not a necessary consequence that the witness is either to gain or lose by the verdict here given. We are inclined to think that he is a competent witness.

Third. Josiah Foster should have been permitted to prove that he was security of Simmons in the bond to Gaw's executors, by any witness who knew the fact. Had the executors needed a witness to prove the execution of the bond on the trial of the cause, the subscribing witness should have been produced ; but it is not probable

that the subscribing witness would, know or be able to prove more readily than any other person, who was the principal or security in the note.

Fourth, fifth and sixth. In these cases we think no error is committed. The object here was to prove that Simmons was indebted. Had he been sued on the notes, they ought to have been produced, because it would have been necessary to set out the contents in the declaration in such manner that the debtor might plead the recovery in bar of any subsequent action for the same cause. But here it was not necessary to prove the contents of the bonds. It suffices to know that Simmons was indebted, and it is not material whether by bond or promissory note; nor is the precise amount at all material.

Seventh and eighth. We think no error was committed here. The object of the plaintiff in producing these two copies of the record being only to prove that the defendants claimed money of Simmons' administrator on a judgment of a Court of Record, it would have been sufficient for that purpose to have proved that the defendants admitted verbally that they claimed the several sums which appear by those copies to have been adjudged to them against Simmons' administrator. Much better then, certainly, was the copy of the transcript which they, by their agent, had delivered to the administrator in this State, as evidence of their demand. Had it been an incorrect copy, they might have corrected their own mistake by producing a correct copy or transcript of the record.

(238) Ninth, tenth and eleventh. The parts of Trasher's deposition excepted to, beginning with the words, "Mr. Simmons, before he started to this country," &c., and the other parts of his deposition subsequently excepted to, are irrelevant and ought to have been excluded.

The part of Warren's testimony given in answer to the second interrogatory, and objected to by defendants, relates to the description of property Simmons had in his possession while he lived in Tennessee. It goes to show that Simmons exercised rights of ownership over negroes of the same description of those claimed by the defendants, and is properly admitted, except the words "acknowledged so to me," contained in the answer to the said second interrogatory, which are irrelevant, and should have been excluded. The other words excluded from the same answer by the Circuit Court, are also objectionable, and were by that Court properly excluded. The rest of Warren's testimony should have been excluded.

All those parts of Ramsay's testimony objected to, and which relate to Simmons' declarations that the property was his own, and his offering to trade it, should have been excluded unless the privity of the Fosters had been proved. It is clearly improper evidence. These points, then, are ruled for the appellants.

Twelfth. The defendants had given evidence to prove that Simmons' departure from Missouri to Tennessee, was a matter of notoriety in the neighborhood, and Donohoe was introduced by the plaintiff to prove that he met S. on his way to Tennessee, and that he declared he was only going to the Mines in Washington county, and would return in the spring. The use of the testimony is not very obvious to the Court, but if it were proper for the defendants to prove the notoriety of his departure, certainly the plaintiff might rebut the evidence of the defendants, and if the evidence be immaterial, it does not belong to the defendant to complain of an abuse introduced by himself. This point is ruled against the appellants.

Thirteenth. The Court instructed the jury that the fact of Simmons' continuing in possession of the slaves after the sale, did *per se* constitute the sale fraudulent and

Foster and Foster *v*. Wallace.

void *as to creditors*, and this is probably the point which was intended to be made. For it is believed that the deed has always been deemed good between the parties thereto, although the vendor may have retained possession after the sale.    Authorities on this point are much opposed to each other.    We are inclined to rule the point (239) for the appellee, inasmuch as the Legislature have manifested a disposition so to construe such sales, and we believe that by such decision less injury would result to the community.

Fourteenth. There is no evidence on which to found the instruction here required.

Fifteenth. We can see no reason why this point should be ruled for the appellant. It is then ruled for the appellee.

Sixteenth. It does not appear that there was any evidence tending to prove that the slaves were taken away after letters of administration granted. It is then thought useless for the Court to make any decision on it. The judgment of the Circuit Court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

(*a*.) See Foster and Foster *v*. Nowlin, 4 Mo. R., 24.
(*b*.) Overruled in Shepherd *v*. Trigg, 7 " " 151.