ROBERT CAMPBELL, *et al.*, Defendants in Error, *vs.* JOHN C. DENT, Plaintiff in Error.

1. *Partnership—Share in profits—When partners.*—The single circumstance that one is to have a share in the profits, does not necessarily make him a partner. He must have some interest in the business, or property of the business, or trade, so as to give him a lien on the property for the protection of his interests or profits, and a control over the same. The interest in the profits must be mutual; each person must have an interest in the profits as a principal trader.

*Error to St. Louis Circuit Court.*

*Geo. P. Doan and Jecko & Hospes,* for Plaintiff in Error.

I. The cause was tried on the theory, that Barrow was the agent of Dent, by reason of a partnership which existed between them. The agency should have been established before evidence of the acts of agency or partnership was received. (2 Starkie Ev., 40, §§ 41, 44; Brown vs. Bank Mo., 2 Mo., 191; Scarborough vs. Reynolds, 12 Ala., 252; M'Donnell vs. Bank of Montgomery, 20 Ala., 313.)

II. No contract of agency or partnership as between Dent and Barrow themselves is proved. (Freeman vs. Bloomfield, 43 Mo., 391.)

III. There was no evidence adduced by plaintiffs to show that Dent held himself out as a partner or admitted himself afterwards to be a partner. (1 Phillips' Ev., 462, n.; Osborne vs. Brennan, 2 Nott & McC., 427; Smith vs. Wright, 1 Abbott Pr., 243; Dry vs. Boswell, 1 Campb., 329; Denny vs. Cabot, 6 Met., 82; Burckle vs. Eckart, 1 Denio, 337; Perrine vs. Hankison, 6 Halst., 181; Divinel vs. Stone, 30 Me., 384; Rapp vs. Vogel, 45 Mo., 524; 10 Am. Law Reg., 209; Story Partn., [Ed. 1868] Chap. 4, §§ 48, 49; Cox vs. Hickman, 8 House of L. C., 268, overruling Waugh vs. Carrier.)

IV. An interest in profits, given as a compensation, does not make the person receiving such interest a partner. (See cases under 2 and 3, *supra.*)

*Thos. T. Gantt,* for Defendants in Error.

I. There was evidence tending to prove the facts stated

hypothetically in plaintiff's instruction; and the sufficiency of that evidence to convince the jury was a matter for them, not for the court now.

II. If Dent and Barrow transacted business as post traders at Fort Fetterman, under the name of J. C. Dent & Co., Dent furnishing the permit and the use of his name to the concern, and Barrow furnishing the goods with the agreement that Dent should have a certain share of the profits, then Dent held himself out to the world as a partner, and was liable as such to all who believed him to be so. (Waugh vs. Carver, 2 H. Bl., 235, and cases cited in the notes; Stearns vs. Haven, 14 Ver., 540; 1 Smith Lead. Cas.; Story Part., §§ 20–27; Pars. Part., 48–65.) Whether such a condition of things constituted him a full partner of Barrow, as between themselves, is of no consequence. As to the world at large, they were partners and liable to all the consequences of that relation. (Turner vs. Bissell, 14 Pick., 192; Miller vs. Bartlet, 15 Serg. & R., 137.)

III. Dent permitted his name to be used as a member, and as a leading member, of the firm. The authorities of the War Department knew him alone, as post-trader. The permit was to him. His name was a prime necessity to the store of the post-traders; the firm could have no existence without his name. On this ground alone he was liable. (See the cases cited above; Chitty Cont., 194–5; Chase vs. Barret, 4 Paige, 148.) The credit was given to the firm of J. C. Dent & Co. Every element of liability, then, is united here. (Whitehill vs. Shickle, 43 Mo., 537.)

Vories, Judge, delivered the opinion of the court.

This action was brought in the St. Louis Circuit Court by Robert Campbell and others against John C. Dent to recover the price of certain goods charged to have been sold and delivered to defendant, a bill of particulars of which was filed with the petition.

The petition charged, that the goods were sold to defendant (together with one John E. Barrow), and that they were delivered to and came into the possession and use of the defend-

Campbell, et al. v. Dent.

ant, and that he has failed to pay, etc. The defendant by his answer denies every material allegation in the petition.

The plaintiffs recovered a judgment at the special term of the Circuit Court, from which the defendant appealed to the General Term, where the judgment was affirmed, and defendant has brought the case here by writ of error.

The evidence, offered and given on the trial on the part of the plaintiffs, was in substance as follows: John Nolan, a witness for plaintiffs, testified, that in the month of November, 1867, he was in the employment of plaintiffs as salesman, knew John E. Barrow, and at the date of the bill sued on was directed by plaintiffs to sell goods to Barrow, the goods set forth in the account sued on. The witness was then asked this question by plaintiffs: "State what was said and done by Barrow at the time?" Defendant objected to this question, as it was not in proof that Barrow was the agent of defendant, and that there was no such allegation in the petition. Plaintiff's attorney then stated to the court, that if it was not proved that Barrow was the agent of the defendant, plaintiffs would not ask for a verdict. The court then overruled the objection made to the evidence, to which ruling of the court the defendant excepted. The witness then said, that Barrow directed him to make out the bill to J. C. Dent & Co., to have the boxes, in which the goods were packed, marked to J. C. Dent & Co., Fort Fetterman, which was done. The goods were charged in the sale book to J. C. Dent & Co. On cross-examination witness stated, that he did not know defendant, never had any conversation with him, that what he had said was what Barrow told him; had sold Barrow goods before, but he was not then in good credit; witness did not ship the goods himself or see them shipped.

It was testified by Hugh Campbell, one of the plaintiffs, that at the time of sale, or a few days before, Barrow told witness, that defendant had a permit to trade at Fort Fetterman, a military post in the Indian County, and that Barrow wanted to purchase goods for that purpose, and the goods were sold at the time named. At the time of the sale witness did not

know defendant. Some months after the sale, witness heard a conversation between Robert Campbell, the other plaintiff, and defendant, in which defendant said he was not in partnership with Barrow, and was not liable to plaintiffs for the goods sold to him, but that defendant admitted, that he was interested in the profits of the adventure. Witness stated, that he could not state the words used by defendant, but he admitted that he was interested in the profits. Barrow had purchased of plaintiffs frequently on his own credit, and had paid for the purchases. Witness stated that he did not, at the time the goods were sold, know anything of the financial standing or responsibility of defendant, made no inquiry in reference thereto. Barrow told witness, that defendant had several permits to trade. The bill of goods sued for was settled by taking Barrow's individual note therefor; did not know why it was so settled, would not have so settled it, if witnesss had known it. The goods sued for have not been paid for. Barrow was sued on the note, judgment obtained, but it had not been paid. David Rankin testified to the same conversation related by Campbell, and also testified, that he was clerk for plaintiffs, and that they had frequently sold Barrow goods before on his own credit.

The foregoing, is all of the evidence offered or given by the plaintiffs. At the close of this evidence, defendant moved the court to instruct the jury, that there was no evidence before them which sustained the allegations of the plaintiffs' petition. The court refused said instruction, to which the defendant excepted. The defendant then read in evidence the deposition of John E. Barrow, which was in substance: That he had known plaintiffs for ten or fifteen years past; he had purchased goods from them frequently; that the last purchase was made in Nov., 1867, the bill sued for; the goods were shipped and sent to Fort Fetterman, Dakota Territory; that he bought them for himself; defendant was not present at the time of the purchase; defendant did not authorize witness to use his name; that witness bought the goods on his own responsibility; defendant had the permit from the

Campbell, et al., v. Dent.

government to trade at Fort Fetterman, that witness had no permit, and could not trade there except under Mr. Dent's name; that his recollection was, that he had explained this matter to the clerk and Hugh Campbell at the time he purchased the goods, and that he bought the goods on his own responsibility, and that defendant had a certain share in the profits; this share was one-fourth of the profits for the privilege of trading under his permit; no profits were made, but a loss; defendant was not to share in the loss. On cross-examination witness stated, that he told the clerk, that he bought the goods for himself under defendant's permit as a trader, and thought he had told Hugh Cambpell the same; that the firm of John C. Dent & Co. was composed of witness individually, and he ordered the goods to be shipped to John C. Dent & Co., and gave the direction about shipping; Spencer disposed of the goods, and was to have one-fourth of the profits for his management. Witness stated, that defendant did not authorize him to use his name in the purchase of these goods under his permit; the fourth of the profits to defendant was a compensation for the use of his permit.

The plaintiff introduced evidence in rebuttal, to the effect, that Barrow had not told Nolan and Campbell, that he purchased the goods on his own account to sell under Dent's permit. This was all of the evidence.

The court then, at the request of the plaintiffs, instructed the jury as follows:

"If the jury believe from the evidence, that the defendant and one John E. Barrow were in November, 1867, engaged in business as post traders at Fort Fetterman, in the Indian Territory, under the name and style of J. C. Dent & Co., the said J. C. Dent being the defendant; that the terms of their partnership were as between themselves, that the said J. C. Dent should procure the permit from the United States authorities to sell goods at that post, that Barrow should furnish the capital, and that the profits of the business should be divided in any proportion between them; that Barrow brought the goods mentioned in the plaintiff's petition from the plain-

tiffs, and directed them to be shipped to J. C. Dent & Co. at Fort Fetterman, marked as the property of J. C. Dent & Co.; that plaintiffs shipped them as directed; that Barrow gave his note for the amount of the goods, which has become due and is unpaid ; that the goods were at the time of the sale charged by the plaintiffs in their books to J. C. Dent & Co., and not to Barrow alone, and that there was no agreement between Barrow and the plaintiffs, that they should not charge the said J. C. Dent & Co. therewith, then they will find for the plaintiffs the value of the goods sold and interest from the commencement of this suit."

The defendant objected to this instruction, and, the instruction being given by the court, he excepted.

The defendant asked the court to give the ·jury several instructions, which, as the case is presented here, it is not necessary to notice. A verdict was returned by the jury in favor of the plaintiffs for the amount of plaintiffs' account with interest. The defendant filed a motion for a new trial, stating as grounds thereof the rulings of the court excepted to, which 'was overruled, and final judgment rendered, when defendant again excepted.

The motion for a new trial, in addition to other causes, set forth, that the defendant had discovered new evidence, which was material in the cause, since the rendition of the verdict. The motion was accompanied by affidavits and counter-affidavits filed by the plaintiffs ; none of these affidavits need, however, be noticed in the consideration of the cause.

The material questions growing out of the record in this case are, first, as to the propriety of the ruling of the court in admitting what Barrow said and did, at the time that he purchased the goods, to be given in evidence; and second, as to the legality of the instruction given by the court at the request of the plaintiffs. Both of these questions are to some extent involved in the first; for if the evidence referred to was improper, then of course the instruction has nothing to support it. As a general proposition the acts and statements of one, who is charged to be a partner of another, cannot be

given in evidence against such other person to bind him, until the partnership has first been proved. The acts and statements of one partner against another are received in evidence in reference to matters connected with the business of the partnership, on the ground that each partner is the agent of the other in reference to such business, and in all such cases the agency must be proved by other evidence, before such acts and statements of the agent can be received in evidence against his principal. (2 Greenlf. Ev., § 484 ; 2 Starkie Ev., 588, [6 Am. Ed.]; Brown vs. Bank of Mo., 2 Mo., 191 ; Scarborough vs. Reynolds, 12 Ala., 252, and cases cited.) At the time that the acts and declarations of Barrow were offered in evidence in this case, no evidence had been offered to prove the existence of a partnership between Barrow and defendant or other agency on the part of Barrow ; but the plaintiffs' attorney informed the court, that he would prove the agency afterwards. The court permitted the evidence, and the question is, did the plaintiffs produce evidence of agency sufficient to authorize the statements and the acts of Barrow to be received as against defendant ? The only evidence offered by plaintiff, which tended to prove the partnership or agency. was the admissions of defendant as testified by Hugh Campbell. This evidence was as follows : " Some months after the sale I heard a conversation between Robert Campbell, the other plaintiff, and defendant, in which defendant said he was not in partnership with Barrow, and was not liable to us for the value of these goods ; but defendant admitted, that he was interested in the profits of the adventure." The witness could not tell the exact words used. Another witness heard the same conversation, and this is all of the evidence, which either proved, or tended to prove, partnership or agency, offered by plaintiff, except the acts and statements of Barrow. It is contended by the plaintiffs that one, " who takes the general profits of a partnership, must of necessity be made liable for its losses," and " he, who lends his name as a partner, becomes as against all the rest of the world a partner." If we exclude the statements and acts of Barrow, we will find no evidence to

prove, that defendant ever lent his name as a partner with Barrow in the purchase of these goods. The plaintiff must rely in this case for evidence, that defendant was the partner of Barrow, so as to make acts and statements of Barrow bind him, on the single fact, that defendant admitted in a conversation with Robert Campbell, after the purchase of the goods, that he was interested in the profits of the adventure, which admission was coupled with a positive denial that he was a a partner of Barrow, or that he was liable for any of his purchases.

It is true, that in the case of Waugh vs. Carver, 2 H. Bl., 247, 2 Vol., Part II, Smith's Leading Cases, 674, and in other cases referred to, it has been held, that one, who receives a share in the general profits, is liable as to third persons for the losses and debts contracted in the prosecution of the business, and it is upon this principle, as stated in that case, that the plaintiff seems to rely for a recovery in this case. The rule laid down in Waugh vs. Carver has not been adhered to either in England or in this country, but a rule more in harmony with reason and justice has been generally adopted.

Judge Story in his work on Partnership, in treating of this subject, states, "In short, the true rule *ex aequo et bono* would seem to be, that the agreement and intention of the parties themselves should govern all cases. If they intend a partnership in the capital stock, or in the profits, or in both, then that the same rule should apply in favor of third persons, even if the agreement were unknown to them. And on the other hand, if no such partnership were intended between the parties, then that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons." (Story Part. [6th. Ed.], § 49 and note, where the authorities are discussed.) In order to constitute a communion of profits between the parties, which shall make them partners, the interest in the profits must be mutual ; each person must have an interest in the profits as a principal trader. It is not enough, that one shall receive a portion of the profits as a com-

pensation for services, but he must have some interest in the business, or property of the business, or trade, so as to give him a lien on the property for the protection of his interests or profits, and a control over the same. The single circumstance, that he is to have a share of the profits, does not necessarily make one a partner so as to bind him by the acts or admissions of one who carries on the business. (Burckle vs. Eckart, 1 Denio, 337; Denny vs. Cabot, 6 Metc., 82; Turner vs. Bissell, 14 Pick., 192; Divinel vs. Stone, 30 Me., 384.)

The case of Wiggins vs. Graham, decided by this court at the last October Term (51 Mo., 17), was an action brought by a clerk, who was by his contract of employment to receive a portion of the profits of the business for his services. Judge Adams, in delivering the opinion of the court in that case, held, that the clerk and his employer were not partners, either as between themselves or as to third persons. From these authorities it will be seen, that one, who receives a part of the profits, is not necessarily a partner, even as to third persons, and in the present case the statement of the defendant given in evidence must all be taken together, in which he denied that he was a partner, but admitted, that he had an interest in the profits; this he might have and still not be a partner. I therefore think, that there was not enough evidence of a partnership to authorize the statements and acts of Barrow to be given in evidence against defendant, and that defendant's instruction at the close of plaintiffs' evidence ought to have been given. It follows that the instruction given in favor of the plaintiffs was improper.

For these reasons the judgment of the Circuit Court must be reversed. Judge Sherwood not sitting, the other judges concurring, the judgment is reversed and the cause remanded.

VORIES, Judge, delivered the opinion of the court on the motion for a re-hearing:

The counsel for the defendants in error has filed his petition for a re-hearing of the cause, and seems to think, that in the opinion of the court it is held, that a person may hold

himself out to the world as a partner in a partnership firm, and still not be liable to third persons for debts contracted in the business of the firm, unless he is actually a partner. By a careful examination of the opinion of the court, it is thought the learned counsel for the defendants in error will see that no such doctrine is held by the court. What is held by the court is, that the mere reception of a portion of the profits does not necessarily make one, who receives it, a partner in the business, and that the evidence in the cause did not show, that the defendant had ever held himself out as a partner of Barrow, or authorized Barrow to do so, so as to bind him by the acts and statements of Barrow, and that, therefore, the acts and statements of Barrow were improperly admitted in evidence against the defendant, and that without such statements there was no evidence to charge the defendant, or authorize a verdict against him. For that reason the instruction, asked for by the defendant at the close of the plaintiffs' evidence, ought to have been given.

We see no reason to change this view of the case. The petition for a re-hearing is therefore overruled.

Judge Napton did not sit; the other judges concur.