## J. R. KELLY ET AL., Respondents, v. W. A. GAINES ET AL., Appellants.

### Kansas City Court of Appeals, February 8, 1887.

1. PARTNERSHIP—WHAT CONSTITUTES INTER SESE, AND AS TO THIRD
   PARTIES.—It is established and settled law in this state, that a
   mere participation in the profits and loss does not necessarily con-
   stitute a partnership between the parties so participating. As
   between the parties themselves, it is a question of *intention;* but
   they may be, nevertheless, liable as *partners* to third persons, by
   holding themselves out as such.

2. —— WHAT PARTICIPATION IN PROFITS MAKES ONE PARTNER AS
   TO THIRD PERSONS.—In order to constitute a communion of profits
   between the parties which will make them partners, the interest in
   the profits must be *mutual ;* each person must have an interest in
   the profits as a *principal trader*, so as to give him a lien on the
   property for the protection of his interests or profits, and a control
   over the same. The single circumstance, that he is to have a share
   of the profits, does not necessarily make one a partner, so as to
   bind him by the acts or admissions of one who carries on the
   business.

APPEAL from Jackson Circuit Court, HON. JAMES
H. SLOVER, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action instituted by the plaintiffs against the defendants as partners for the purchase price of certain barrels alleged to have been sold by the former to the latter.

The defendants are W. A. Gaines and Max Minter, and the question in the case was, were they partners in the purchase of the barrels?

W. A. Gaines owned the Central Mills in Kansas City, and had been operating them prior to February, 1885, under the name of W. A. Gaines & Company, having had, during the four years prior to said date, several different partners. Just prior to said date said mills were injured by fire, and Gaines had no means with which to continue the operation of the mills. About said date Gaines received several large orders for meal from parties in the south. Being without money to buy the necessary corn in order to fill the orders, he called on Max Minter to make an arrangement with him for the purpose of obtaining the corn. Max Minter and his two brothers, under the firm name of Minter Brothers, were engaged in the grain business in Kansas City. An arrangement was made between Gaines and Max Minter. As to what the arrangement was, there was a conflict of testimony.

The plaintiffs furnished barrels to Gaines after he and Minter entered into the arrangement, whatever that arrangement was.

There was evidence tending to show that Max Minter had conducted, and held himself out as a partner of Gaines, and that, on the credit of such supposed partnership, the plaintiffs furnished the barrels in suit. As to this, however, there was also a conflict of testimony.

Gaines, as a witness, testified in behalf of the plaintiffs, as to what the arrangement was. His testimony, as shown by the record, is not very clear or satisfactory. It is difficult to say from his testimony what were the

exact terms of the agreement between Gaines and
Minter. It does appear clearly, however, that Minter was
to furnish the corn required by Gaines to fill the orders
already referred to, and that Gaines was to grind the
corn into meal and fill the orders. Minter was to
furnish nothing but the corn. According to Gaines'
statement it was agreed that Minter should receive a
profit of ten dollars on each car of meal made from
the corn so furnished, over and above the cost of
said corn, which said profit Gaines guaranteed. As
to this point, Gaines' statement is a little confused,
and not altogether consistent. In one place he is
made by the record to state, "and I told him that
I would guarantee about twenty dollars a car profit."
At another place, in reply to the question : "the agree-
ment was, then, he was to have at least ten to twenty
dollars profit," he says : "Yes, sir, we figured on that
profit." Again, the statement is made : "Well, I sup-
pose Mr. Minter was to have ten dollars. If it went
above that I was to have the profit on the meal. I don't
know how Mr. Minter understood it. I told him I
would guarantee ten to twenty dollars profit on the meal.
I meant the profit on a car of meal would be that."
Further on he says, "and I supposed if the profits were
over ten dollars we were to divide the profits, and if it
only went to ten dollars he was to have it. There was
nothing said about that at all at that time. I expected
the profits to be over ten dollars a car." Finally, in re-
ply to the question : "In regard to this surplus of over
ten dollars, what was your agreement with Minter as to
what was to be done with that?" he says : "There was
never any agreement about it." The testimony, taken
altogether, must, we think, be regarded as stating, in
effect, what we have just said, viz.: that Minter was
guaranteed by Gaines a profit of ten dollars on each car
of meal made from the corn supplied by Minter, over
and above the cost of said corn. Minter, on the con-
trary, testified that he agreed for his firm, Minter

Brothers, to furnish the corn to Gaines for a commission of ten dollars on each car of corn.

The court gave for the plaintiff, among others, the following instruction:

"2. If you find from the evidence that plaintiffs sold the barrels sued for in this action at the date of sale of barrels to defendant Gaines, and that at the time of sale defendant Gaines and Minter were mutually interested in the grinding of meal in Kansas City, Missouri; that Gaines was to furnish the mill and Minter the corn, and that Minter was to have a certain amount on each car load of meal so furnished and ground as his share of the profits of such business, over and above the cost price of the corn so by him furnished, then you will find for plaintiffs against both the defendants."

The court refused to give for the defendant Minter, among others, the following instruction:

"12. If the jury believe, from the evidence, that defendants Gaines and Max Minter entered into an agreement, by the terms of which Minter was to furnish corn, at his own expense, and Gaines was to grind it, barrel it, and ship it at his own expense, and each to be entitled to an equal share of the profits arising out of the subject matter of the contract, this would not constitute them partners, and make them both liable for expenses incurred by either of them in the performance of his part of the contract."

Defendant Gaines does not appear, from the record, to have filed an answer.

Under the instructions, the jury found a verdict in favor of the plaintiffs, and from a judgment accordingly entered defendant Minter has appealed to this court.

JOHN F. WATERS, and CRITTENDEN, McDOUGAL & STILES, for the appellants.

I. The court erred in giving plaintiffs' instructions. It has always been held in this state that a mere interest even in general profits, was not sufficient to constitute

the parties partners. *Stoalings v. Baker*, 15 Mo. 481; *Campbell v. Dent*, 54 Mo. 325; *Donnell v. Harshe*, 67 Mo. 170; *Gill v. Ferris*, 82 Mo. 156; *Clifton v. Howard*, — Mo. ——. There was no *intention* between the parties themselves that there should be a partnership; their contract did not make them partners, and this the plaintiffs are presumed to have known. *Denny v. Cabot*, 6 Met. (Mass.) 82; *Loomis v. Marshall*, 12 Conn. ——. In this state there is no partnership unless each partner has the right to manage the whole business and dispose of the whole property. *Donnell v. Harshe*, 67 Mo. 170, 173; *Ashby v. Shaw*, 82 Mo. 76, and cases cited. Parties become partners by contract, by intent, by estoppel, or by construction of law, the most important element being the mutuality of agency. *Beecher v. Bush*, 45 Mich. 188; *Harvey v. Childs*, 28 Ohio St. 319; *Eastman v. Clark*, 53 N. H. 276; *Wilson v. Whitehead*, 10 Mees. & W. 503. Here all these elements of partnership were lacking. There was no concealment of facts, and the mere statement to plaintiff by defendant, Max Minter that, "I will see that the barrels are paid for," does not make defendants, Minter Brothers, partners with Gaines. See authorities above cited.

II. From the authorities above cited, it will be apparent that the instructions asked by defendant Minter, and refused by the court, should have been given. Taken as a whole, they correctly state the law under the facts proven. The tenth, especially, should have been given. *Donnell v. Harshe, supra.* And it was reversible error to refuse the eleventh, which is in the exact language of a declaration of law approved in *Lucas v. Cole* (57 No. 143, 145).

III. The court erred in admitting proof of statements made to plaintiffs by defendant Gaines, no partnership having been proven. *Campbell v. Dent*, 54 Mo. 325, 331; *Filley v. McHenry*, 71 Mo. 417.

CHASE & POWELL, for the respondents.

I. The court did not err in giving plaintiffs' instruc-

tions. The instructions given for the plaintiff simply declare the law of partnership applicable to the evidence of this case, viz.: that Gaines and Minter were mutually interested in grinding the meal, Gaines furnishing the mill and Minter the corn, and to share the profits from manufacture of the meal, which profits Minter attempted to make as large as possible by his supervision, and management, and acts. That Minter conducted himself toward plaintiffs, and the business, by his acts and interest in, and control and authority over, the business, and is liable to Kelly Brothers as a partner. "All declarations, by word or act, the rights exercised, and every circumstance, may be proved, and must be considered in determining whether there is partnership as to third persons." *Pierson v. Steinmeyer*, 4 Richardson L. (S. C.) 309 ; *Summers v. Post*, 1 Ala. 65. While Gaines and Minter seem never to have talked of losses (we presume losses were not deemed possible), yet a participation in profits implies a participation in losses, and there is no special contract for losses necessary to make one a partner. The profits were uncertain, and depended largely on the efforts of Minter as well as Gaines. *Lengle v. Smith*, 45 Mo. 276 ; *Pierson v. Steinmeyer*, *supra.*

II. It is not necessary to prove particular terms of partnership, if defendant, by his acts, held himself out to the world and plaintiffs, as partners. *Rippey v. Evans*, 22 Mo. 158 ; *Gates v. Watson*, 54 Mo. 591.

III. The instructions under thirteen and fourteen, given for defendants, embody all the law applicable to the evidence in this case for the defendant, and it is not error to refuse instructions multiplied *ad infinitum*, that neither state the law nor are applicable to the facts and evidence, as was the case with instructions for defendant from one to twelve, refused by court. The tenth instruction was properly refused, for each partner may retain exclusive ownership of separate property contributed by him to use of partnership. *McCrary v. Slaugh-*

*ter*, 58 Ala. 230 ; *Jones v. McMichael*, 12 Richardson L.. (S. C.) 176.. It was not error to refuse the eleventh instruction. An instruction may be correct as an abstract proposition of law, but every instruction must be given or refused with reference to the applicability of the instruction to the facts and evidence in each particular case. *Lucas v. Cole*, 57 Mo. 145.

HALL, J.—It is established and settled law in this state that, " a mere participation in the profits and loss. does not necessarily constitute a partnership" between the parties so participating. *Donnell v. Harshe*, 67 Mo.. 173 ; *Philips v. Samuel*, 76 Mo. 658 ; *Musser v. Brink*, 63 Mo. 242 ; *McDonald v. Matney*, 82 Mo. 365. In the latter case it is said that, as between the parties themselves, "it is a question of intention on the part of the alleged partners, and is one which the triers of the fact will have to determine upon all the circumstances. proved. It would be difficult to state any one fact or stipulation which would be decisive of the question, except a stipulation expressed that they were partners. *inter sese*, and even this might be controlled by other stipulations, and the conduct of the parties in the relation to the business. Each case must be determined upon its own peculiar facts." This statement has since been re-affirmed by the [Supreme Court of this state in *Kellogg Newspaper Company v. Farrell et al.* (88 Mo.. 50), and in *Clifton v. Howard* (— Mo. —).

Parties, as between themselves, may not be partners, but as to third parties may be liable as partners. If Max Minter conducted and held himself out as a partner of Gaines, then he was Gaines' partner as to the plaintiffs, if they sold the barrels under the belief that he was Gaines' partner. *Gates et al. v. Watson et al.*, 54 Mo. 591.

The question is, did the facts hypothetically stated in the second instruction given for the plaintiffs, viz.: " That Gaines was to furnish the mill, and Minter the

corn, and that Minter was to have a certain amount on each car load of meal so furnished and ground, as his share of the profits of such business, over and above the cost or price of the corn so by him furnished,'' alone, without more, constitute Minter, as to the plaintiffs, Gaines' partner in the business, and render him liable as such?

The question thus presented, as to what participation in the profits in a concern will render the one so participating a partner in the concern, as to third parties dealing with the concern, is a vexed question, and it would be impossible to reconcile the various authorities upon the question. But there is, upon the question, a well settled rule in this state, established by the Supreme Court, and that rule we must follow.

The following statement by Mr. Story: "In short, the true rule, *ex aequo et bono*, would seem to be, that the agreement, or the intention of the parties themselves, should govern all cases. If they intend a partnership in the capital stock, or in the profits, or in both, then that the same rule should apply in favor of third persons, even if the agreement were unknown to them. And, on the other hand, if no such partnership were intended between the parties, then that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons" (Story on Part., sect. 49), has been approved as a correct statement of the rule on this question. *Campbell et al. v. Dent*, 54 Mo. 332. And in connection with the statement of the rule by Mr. Story the court said: "In order to constitute a communion of profits between the parties, which shall make them partners, the interests in the profits must be mutual; each person must have an interest in the profits as a principal trader. It is not enough that one shall receive a portion of the profits as a compensation for services, but he must have some in-

terest in the business, or property of the business, or trade, so as to give him a lien on the property for the protection of his interests or profits, and a control over the same. The single circumstance, that he is to have a share of the profits, does not necessarily make one a partner so as to bind him by the acts or admissions of one who carries on the business." In *Kellogg Newspaper Company v. Farrell et al. (supra)*, it was sought to hold Farrell liable as his co-defendant's partner, as to a third party, who had sold his co-defendant, Lindenberger, certain materials to be used in conducting a certain newspaper. Under an agreement between Farrell and Lindenberger the former had turned over to the latter a certain newspaper to be conducted by the latter as if he were the owner thereof. Lindenberger agreed to conduct the business in his own name, to pay all expenses attending the running thereof, and to pay one-half of the net proceeds of the concern to Farrell quarterly. Farrell reserved the right "to indicate the general and political policy of the paper, and, also, at any time to dispose of a one-half interest in the same." It was held that, as between themselves, the parties to the agreement were not partners; and it was also held that, even as to the party who had furnished the materials to be used in conducting the newspaper, the parties were not partners. The court, by Norton, J., said: "In the light of these expressions" (expressions of the agreement mentioned by us) "and construing the contract as an entirety, we regard the agreement to pay Farrell one-half of the net proceeds as simply measuring the compensation he was to receive for the use of the property turned over to Lindenberger; and not as giving a right to participate in the profits, as profits of the business."

The expression "profits, as such," used in the case last cited and referred to, means profits before they are ascertained and divided, and not profits which, after they have been ascertained, make the fund for, and form the measure of, the payment to the alleged partner on

account of his interest. Pars. on Part. (2 Ed.) chap. 6, sect. 2, p. 73.

Under the facts hypothetically stated in the instruction given for the plaintiffs, as constituting Minter a partner, he had no interest in the profits while accruing; his interest began only when the profits had been ascertained; until then he had no interest in or control over them. He had no interest in the profits as such; he simply had an interest in the profits as constituting the fund out of which he was to receive the compensation of ten dollars on each car load of meal, guaranteed by Gaines. Such profits thus paid to him were paid to him as a compensation for furnishing the corn to Gaines, and were not paid to him as Gaines' partner. There was no communion of profits between Minter and Gaines; the interest in the profits was not mutual; Minter had no interest in the profits as a principal trader. Hence, under the rule laid down in *Campbell v. Dent* (*supra*), and approved in the very recent case of the *Kellogg Newspaper Company v. Farrell et al.* (*supra*), we hold that the facts stated in the instruction did not, without more, constitute Minter and Gaines partners.

The twelfth instruction asked by Minter and refused by the court, abstractly declared the law correctly. As applied to the facts of this case, it was objectionable, because there does not seem to have been any evidence tending to show that the parties were to share the profits equally, and because it ignored the evidence tending to show that Minter conducted and held himself out as a partner in the business. Modified in the two respects indicated, the instruction should have been given.

Plaintiff, J. R. Kelly, was permitted to testify that Gaines told him that Minter was with Gaines in the business. Objection was then made, and is here renewed, to such testimony. Kelly, however, also testified that he called on Minter, before furnishing the barrels,

to see about the matter; that he told Minter what Gaines said; that Minter said, "that is all right, I will see that the barrels are paid for." The statement made by Gaines, in connection with other testimony, was competent.

Judgment reversed and cause remanded. All concur.