JOHN E. DAHMER, Respondent, v. METROPOLI-
TAN STREET RAILWAY COMPANY, Appel-
lant.

Kansas City Court of Appeals, March 29, 1909.

1. STREET RAILWAYS: Collision: Negligence: Humanitarian
Doctrine: Evidence. Evidence relating to the conduct of a
motorman in charge of a street car upon seeing a traveller
about to cross the track with his vehicle, is reviewed and the
former is held guilty of negligence under the humanitarian doc-
trine, since the inference may be fairly drawn that the motor-
man should have observed that the traveller was intending to
cross ahead of the car when his horse was twenty-five feet
from the track and he failed to stop his car though one hun-
dred and twenty-five feet away.

2. ——: ——: ——: ——: ——: Trial Practice. The
submission of the question of contributory negligence to the
jury is not held a sufficient fault to warrant an interference
with the judgment since defendant, though not bound by the
position he is compelled to take by an adverse ruling of the
court, is bound by one he voluntarily takes.

Appeal from Jackson Circuit Court.—*Hon. E. E.
Porterfield,* Judge.

AFFIRMED.

*John H. Lucas, Frank G. Johnson* and *C. S. Palmer*
for appellant.

(1) The peremptory instruction asked by defend-
ant should have been given. Roenfeldt v. Railway, 180
Mo. 554; Boring v. Railway, 194 Mo. 541; Mar-
kowitz v. Railway, 186 Mo. 350; Hebeler v. Railway,
112 S. W. 34; Cole v. Railway, 121 Mo. App. 605; Bar-
ris v. Transit Co., 102 Mo. App. 87; Fanning v. Tran-
sit Co., 103 Mo. App. 151; Ross v. Railway, 113 Mo.
App. 600; Moore v. Railway, 176 Mo. 528; Grout v.
Railway, 125 Mo. App. 552; Zalotuchin v. Railway, 127

Mo. App. 577. (2) The court erred in giving instruction number 4 for the plaintiff. Roenfeldt v. Railway, 180 Mo. 554; Peterson v. Railway, 111 S. W. 37. (3) The court erred in giving instruction number 3 for plaintiff. Grout v. Railway, 125 Mo. App. 552; Zalotuchin v. Railway, 127 Mo. App. 577; Ross v. Railway, 113 Mo. App. 600; Moore v. Railway, 176 Mo. 528; Cole v. Railway, 121 Mo. App. 605. (4) The verdict was excessive. Daherty v. Kansas City, 105 Mo. App. 173; Haynes v. Trenton, 108 Mo. 123; Stoetzele v. Swearigen, 90 Mo. App. 588.

*Clem P. Ehinger* and *Ulmann & Miller* for respondent.

(1) The plaintiff was not negligent as a matter of a law in going upon the track. Linder v. Transit Co., 103 Mo. App. 574. (2) Immaterial whether or not plaintiff was negligent in going upon the track, as case was submitted to the jury upon the theory of the "Humanitarian doctrine." Johnson v. Railway, 203 Mo. 381; Cole v. Railway, 121 Mo. App. 605; White v. Railroad, 202 Mo. 539. (3) Case was properly submitted to the jury upon the theory of the "humanitarian doctrine." Richmond v. Railway, 123 Mo. App. 495; Kelley v. Railway, 101 Mo. 67; Deitring v. Transit Company, 109 Mo. App. 524; White v. Railroad, 202 Mo. 539; Schafstette v. Railroad, 175 Mo. 142; Jett v. Railroad, 178 Mo. 664; Barrie v. Transit Co., 119 Mo. App. 38; Morgan v. Railroad, 159 Mo. 262; Bensick v. Railroad, 125 Mo. App. 121; Klockenbrink v. Railroad, 81 Mo. App. 351; Baxter v. Transit Co., 198 Mo. 1; Oates v. Railway, 168 Mo. 535. (4) In passing upon defendant's demurrer the court must consider not only plaintiff's evidence, but all of the evidence in the case, including defendant's testimony. Klockenbrink v. Railroad, 172 Mo. 678; McPherson v. Railroad, 97 Mo. 253; Eswin v. Railroad, 96 Mo. 294; Jennings v. Railroad, 112 Mo. 268. (5) The court did not err in giv-

ing plaintiff's instruction number 4. Cobb v. Railway, 149 Mo. 135; Fitzgerald v. Barker, 96 Mo. 661; Blanton v. Dold, 109 Mo. 64; O'Mara v. Transit Co., 102 Mo. App. 203; Fillingham v. Transit Co., 102 Mo. App. 584; Berkson v. Railway, 144 Mo. 211; Swanson v. Sedalia, 89 Mo. App. 121; State ex rel. v. Hope, 102 Mo. 426; Aston v. Transit Co., 105 Mo. App. 226. (6) The court did not err in giving plaintiff's instruction number 3. Linder v. Transit Co., 103 Mo. App. 574; White v. Railroad, 202 Mo. 539; Johnson v. Railway, 203 Mo. 381; Wise v. Transit Co., 198 Mo. 558; Degel v. Transit Co., 101 Mo. App. 56; Berkson v. Railway, 144 Mo. 211; Hall v. Railroad, 124 Mo. App. 661. (7) The verdict was not excessive. McNamara v. Transit Co., 106 Mo. App. 349; Stotler v. Railroad, 200 Mo. 107; Wills v. Railroad, 44 Mo. App. 51.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries caused by the collision of an electric street car operated by defendant with the wagon in which plaintiff was riding. The cause of action is founded on the alleged negligence of defendant in the operation of the car. The trial resulted in a verdict and judgment for plaintiff in the sum of one thousand dollars.

The injury occurred on the morning of December 15, 1905, at the intersection of Fifteenth and Campbell streets, public thoroughfares in Kansas City. Campbell street runs north and south, Fifteenth street east and west. There is a break in the continuity of the south line of Fifteenth street at this crossing. East of Campbell street, Fifteenth street is much wider than it is west of Campbell street. Along the middle of Fifteenth street, defendant operates a double-track street railroad. The north track is used by west-bound cars, the south track by cars going east. Plaintiff drove north on Campbell street in a one-horse milk wagon and intended to cross Fifteenth street and continue north-

ward on Campbell. When he reached the south line of Fifteenth street he looked to the east and saw a car coming west on the north track. He testified that the car at this time was east of Harrison street. If this statement is accurate, the car was from four hundred and fifty to five hundred feet east of the point of collision. Plaintiff drove on in a slow trot which he described as being no faster than an ordinary walk. When his horse was about twenty-five feet from the north track, plaintiff looked again and observed that the approaching car was about two hundred and fifty feet from the crossing. He did not look again in that direction until his horse was on the north track. Then he discovered that a collision was imminent and attempted to escape by hurrying the horse, but his efforts were unavailing. The car struck the wagon at about the front wheels with a force so violent that plaintiff was hurled through the window of the front vestibule and sustained the injuries of which he complains. After the collision, the car ran about one hundred and twenty-five feet before it was brought to a standstill. From the moment plaintiff entered Fifteenth street, there was no obstruction to vision between the wagon and the car. Plaintiff knew of the approach of the car and the motorman states that he observed the wagon. Witnesses for plaintiff stated that the car was going fast, but they did not attempt to give the rate of speed in miles per hour. The motorman testified that in approaching Campbell street the car ran at the rate of twelve to fourteen miles per hour. There is substantial evidence introduced by plaintiff to the effect that the motorman made no effort to stop or check the speed of the car until the collision occurred. This is contradicted by the evidence of defendant which tends to show that the motorman exerted himself to stop as soon as he became aware that plaintiff intended to attempt to cross ahead of the car. It is downgrade from Harrison to Campbell streets. The motorman testified

that with a good rail the car might have been stopped in one hundred feet, but that at the time in question the rails were frosty and, therefore, not in good condition for making a quick stop. Pertinent to the issue of when the motorman should have known that plaintiff was in peril, we quote from the testimony of the motorman as follows: (On direct examination).

"I first saw the man driving across Fifteenth street, —starting that way, and as he got to the outgoing track, that is the opposite track going out, we was on the inbound track—as he got there the horse stopped just for an instant, and then he began whipping his horse across the track, and I applied the air. I did not have much time. The horse got across the track and the car struck the wagon and it caused the driver to fall inside the front window of the car, and one or two passengers caught him and held him to keep him from falling in front of the car." (On cross examination):

"Q. With reference to the north track, how far south of that track was the wagon when you first saw it? A. Twenty or twenty-five feet. Q. Twenty or twenty-five feet south of the north track? A. Yes, sir. Q. What rate of speed, about, was that horse going at that time? A. Just driving in an ordinary trot. Q. Sort of a dog trot? A. Yes, sir. Q. That was a slow gait. A. Yes, sir, an ordinary gait. Q. When you saw that wagon, at that time about twenty or twenty-five feet south of the north track, how far east of the point of collision was your car at that time? A. I suppose about fifty feet, maybe further than that, I am not sure. Q. You say it was not any further east than that? A. I am not sure how far east it was. Q. Could it have been one hundred and fifty feet east at that time? A. It might have been, I don't know."

The petition alleges: "That said injuries to plaintiff were caused by the negligence and carelessness of the defendant, its agents, servants and employees in charge of said car, in running the said car into and

against the wagon of this plaintiff after the said defendant, its agents, servants and employees in charge of said car saw, or by the exercise of ordinary care could have seen that the plaintiff was in a position of peril upon said track in time to have stopped said car and have avoided said collision with plaintiff's wagon."

The answer contains a general denial and the averment "that if plaintiff received any injuries at the time mentioned in said petition the same were caused by plaintiff's own fault and negligence."

First, it is insisted by defendant that its demurrer to the evidence should have been sustained. In view of the facts and circumstances in proof most favorable to the maintenance of the cause of action pleaded (which is the view we must entertain in passing on the demurrer to the evidence), we think the negligence of defendant under the principle and rules of the "humanitarian" doctrine is apparent. From the facts that plaintiff ceased to look in the direction of the car when his horse arrived at a point about twenty-five feet from the track and that he proceeded in a manner to indicate to an observant person in the situation of the motorman that he intended to cross ahead of the car, the motorman should have realized the existence of such purpose and should have made reasonable use of the means at hand to check the speed of the car in order that plaintiff might cross in safety. This duty of the motorman was not removed nor affected by the consideration that plaintiff himself might be negligent. Both plaintiff and defendant were rightfully traveling on a public street, neither had the right to require the other to make way for him. Each was bound to employ reasonable care to avoid a collision. But since defendant possessed the more powerful and dangerous vehicle, the humanitarian principle imposed on it the additional duty of being watchful to discover the peril of plaintiff, no matter by whose fault that peril arose, and on becoming aware of its existence, to make every

reasonable effort to remove it. [McKenzie v. Railway, — Mo. ———, 115 S. W. 13; Cole v. Railway, 121 Mo. App. 605; Grout v. Railway, 125 Mo. App. 552.] Since the inference fairly may be drawn that the motorman should have observed that plaintiff was intending to cross ahead of the car when the horse was twenty-five feet from the track, facts in proof strongly tend to convict the motorman of being remiss in not attempting to reduce speed. He must have been at least one hundred and twenty-five feet from the point of collision and had he employed reasonable care, it is fair to assume either that he could have stopped the car in that distance or so materially checked its speed that the collision would have been averted. Instead of doing this, witnesses for plaintiff say (and the fact that the car ran over one hundred feet after the impact supports the statement) that the motorman put forth no effort to stop until the car was right at the wagon. We think the evidence most favorable to plaintiff was sufficient to take the case to the jury on the issue of "humanitarian" negligence and, therefore, that the demurrer was properly overruled.

The instructions correctly declare the law of the case and rightly construed do not enlarge the cause of action pleaded in the petition. The question of contributory negligence though not put in issue by the pleadings (Ramp v. Railway, 133 Mo. App. 700, 114 S. W. 59) was treated by both parties as an issue of fact to go to the jury, and if it might be said that plaintiff was guilty in law of contributory negligence, we would not feel justified in reversing the judgment on account of the submission in plaintiff's instructions of the issue of contributory negligence. A defendant, though not bound by a position he is compelled to take by adverse rulings of the court is bound by one he voluntarily assumes. We do not feel justified in pronouncing the verdict excessive. Plaintiff had three ribs

broken and received some cuts and bruises. He paid his doctor seventy-five dollars and at the time of the trial (over a year after the injury) had not fully recovered. For such injuries a verdict of $1,000 does not bespeak passion or prejudice on the part of the jury.

The judgment is affirmed. All concur.