## A. GRAF DISTILLING COMPANY, Appellant, v. JOE T. WILSON, Respondent.

### St. Louis Court of Appeals, April 8, 1913.

1. **PARTNERSHIP: Establishing Relation: Estoppel.** One who does not permit himself to be held out as a partner, who takes no part in the business and does not permit his name to be used in any way in connection therewith, cannot be held liable as a partner by estoppel.

2. ———: ———: ———: **Sufficiency of evidence.** In an action to charge defendant as a partner by estoppel, evidence *held* to fail to substantiate the charge.

3. **APPELLATE PRACTICE: Binding Effect of Theory at Trial.** A party is bound by the position he voluntarily assumes at the trial, and where he treats an issue as being one for the jury, he cannot afterwards complain that it was submitted to the jury, even though it be one that might have been passed on as a matter of law.

4. **PARTNERSHIP: Establishing Relation.** Mere participation in the profits and losses of a business, alone, would not necessarily make the participant a partner.

5. ———: ———. Whether, in fact, a partnership exists, depends upon the intention of the parties, to be discovered from the contract into which they enter, construed in the light of all the facts and circumstances that obtain.

6. ———: ———: **Sufficiency of Evidence.** In an action to charge defendant as a partner, *held* that evidence that defendant was to participate in the profits, if any, was at most merely

prima facie evidence of an intention to form a partnership, and that other evidence tended to rebut such prima facie evidence; and hence it is *held*, that plaintiff was not entitled to have the court declare, as a matter of law, that defendant was a partner.

7. ——: ——: **Instructions.** In an action to charge defendant as a partner, the court instructed the jury that plaintiff was required to make out its case from the greater weight of the testimony, that the fact that defendant was to participate in the profits did not necessarily make him a partner, but that, under the evidence, it was a question of intention of the parties whether a partnership existed, and that if the jury found there was no intention by defendant to become a partner, but that it was only intended that he should share in the profits of the business, as a consideration for signing notes for another to obtain capital to conduct the business, they should find for defendant, but that such intention must be determined from the contract itself, and, if it failed to disclose whether a partnership relation existed, then the question of intention should be determined from all the facts. *Held*, that the giving of the instruction was not reversible error.

8. **TRIAL PRACTICE: Witnesses: Calling Adversary as Witness: Cross-Examination.** A party calling his adversary as a witness makes him his own witness, and counsel for such witness may, in the discretion of the court, ask him leading questions on cross-examination.

Appeal from Cape Girardeau Court of Common Pleas.
—*Hon. Robert G. Ranney,* Judge.

AFFIRMED.

*Davis & Hardesty* for appellant.

(1) Partnership is the sole issue and strict proof thereof is not required of a creditor prevented by the alleged partner from showing the written agreement, all presumptions then being in support of the allegation of partnership. Block v. Price, 24 Mo. App. 14; Pomeroy v. Benton, 77 Mo. 64; Wigmore on Ev. Par., 278; 30 Cyc. 412; 16 Cyc. 1058. (2) If from the uncontradicted proof as to the contents of the writing a partnership arises by law, there should be a reversal and a directing of judgment for the admitted

amount of plaintiff's claim. Paris Mfg. Co. v. Carle, 116 Mo. App. 581; Steckman v. Bank, 126 Mo. App. 664; Bank v. Altheimer, 91 Mo. 165; Buford v. Lewis, 112 S. W. 965; Dilley v. Abright, 48 S. W. 548. (3) A prima facie case of partnership was created by the provision for profit sharing; supported by the provision for regulating the business, and not rebutted by any provision indicating that the sharing was in the capacity of a creditor. 30 Cyc. 415; 22 Am. & Eng. Ency. Law (2 Ed.), 35, 36, 41; Bank v. Altheimer, 91 Mo. 190; Torbert v. Jeffrey, 161 Mo. 65; Nugent v. Armour Pkg. Co., 208 Mo. 498; Grocery Co. v. Berry, 58 Mo. App. 665; Steckman v. Bank, 126 Mo. App. 664; Tamblyn v. Scott, 111 Mo. App. 46; Swofford Bros. D. G. Co. v. Diment, 132 Mo. App. 616; Buford v. Lewis, 112 S. W. (Ark.) 963; Rosenfield v. Haight, 53 Wis. 260; Rahl v. Parlin, etc., Co., 64 S. W. (Tex.) 1007; Dilley v. Abright, 48 S. W. (Tex.) 548; Pooley v. Driver, 5 Ch. Div. (L. R.) 458; Purvis v. Butler, 87 Mich. 248 Poundstone v. Hamburger, 139 Pa. 319; Waverly, etc., Co. v. Hall, 150 Pa. 466; Johnson v. Rothschilds, 63 Ark. 518; Eager v. Crawford, 76 N. Y. 97; Plunkett v. Dillon, 4 Houst. (Del.) 338; Bank v. Hennessey, 48 N. Y. 553; Fertilizer Co. v. Reams, 105 N. C. 283; Cossock v. Burgwyn, 112 N. C. 304; Greenwood v. Brink, 1 Hun, 227; Powell v. Moore, 79 Ga. 524. (4) The agreement provided for defendant to share not as a creditor but as an owner, i. e., a partner. Bank v. Altheimer, 91 Mo. 190; Steckman v. Bank, 126 Mo. App. 665; Nugent v. Armour Pkg. Co., 208 Mo. 480; 30 Cyc. 352, 372, 383-384; Rahl v. Parlin, etc., Co., 64 S. W. (Tex.) 1007; Dilley v. Abright, 48 S. W. (Tex.) 548; Magovern v. Robertson, 116 N. Y. 61; Bank v. VanSlyck, 29 Hun, 188; Buford v. Lewis, 112 S. W. (Ark.) 963; Rosenfield v. Haight, 53 Wis. 260; Mason v. Partridge, 4 Hun, 621, 66 N. Y. 633; Burnett v. Snyder, 76 N. Y. 344; Eager v. Crawford, 76 N. Y. 97; Richardson v. Hughitt, 76 N. Y. 55; Par--

ker v. Crawford, 37 Conn. 250; Sullivan v. Sullivan, 122 Wis. 326; Cook v. Carpenter, 34 Vt. 121; Stearns v. Haven, 14 Vt. 540. (5) Defendant should also be held as a partner by estoppel. 16 Cyc. 390-395. (6) The court erred in refusing plaintiff's 4th and giving defendant's 5th instruction. Monson v. Ray, 123 Mo. App. 1; Torbert v. Jeffrey, 161 Mo. 645; Nugent v. Armour Pkg. Co., 208 Mo. 480; 30 Cyc. 352, 360-361, 416; 22 Am. & Eng. Ency. Law (2 Ed.), 26; Dilley v. Abright, 48 S. W. (Tex.) 548; Griffin v. Carter, 21 N. Y. App. Div. 51, 165 N. Y. 621; Miller v. Bartlett, 15 Serg. & R. 137; Hart v. Kelley, 83 Pa. 286; Commercial Bank v. Miller, 96 Va. 357; Poundstone v. Hamburger, 139 Pa. 319; see also cases cited under points III and IV. (7) The court erred in declining to prohibit the leading questions propounded by defendant's counsel. Wigmore on Ev., Pars. 769; 773, 774, 909; Creighton v. Modern Woodman, 90 Mo. App. 378.

*Ely, Kelso & Miller* for respondent.

ALLEN, J.—This is an action by plaintiff corporation, appellant here, against one Joe T. Wilson, respondent in this court, seeking to hold the latter liable as a partner for an alleged partnership debt.

It appears from the evidence that on or about June 12, 1907, one Joe Goldbaum launched a retail liquor business in the city of Cape Girardeau under the name of the "Cape Liquor Company." That shortly prior thereto Goldbaum, desiring to enter into this business, and having no capital, induced the defendant Wilson and one John T. Sackmann to indorse notes for him to the amount of $1200 upon which money was procured from banks in order to conduct and carry on the business. It was agreed between the defendant and Sackmann on the one hand and Goldbaum on the other that, out of the profits of the business, payments were to be made on these notes by Goldbaum, as fast

as money could be realized from the business therefor; and after the notes had been paid, the net profits were to be divided equally between him, Sackmann and the defendant. Goldbaum was to first pay the running expenses of the business, including fifty dollars per month to himself.

The business was conducted by Goldbaum under this arrangement until about September 3, 1907, at which time there was a further agreement between him, Sackmann and the defendant, whereby it was agreed that if Goldbaum would pay off these notes, and pay all debts contracted in conducting the business, defendant and Sackmann would not be entitled to any profit. Thereafter Goldbaum continued to conduct the business at the same place and under the same name until he went into bankruptcy. On August 5, 1908, he was adjudged a bankrupt, and the assets of the "Cape Liquor Company" were sold, realizing something like $500. Sackmann was also adjudged a bankrupt, with no assets, prior to the institution of this suit.

It appears that Sackmann and the defendant were each engaged in other business in the city of Cape Girardeau, and did not want their connection with the "Cape Liquor Company" or with Goldbaum known, whatever that connection was. They were not publicly known as having an interest in the business, their names were not used upon stationery of the conern nor apparently otherwise in connection with the business. Plaintiff's position, however, is that they were partners, and liable as such for the partnership debts.

The suit is for a liquor bill, for whiskeys sold to the "Cape Liquor Company" upon the order of Goldbaum, who was conducting the business. It appears that plaintiff's salesman, one Robert Cone, obtained the order from Goldbaum on June 5, 1907, shortly prior to the time that the "Cape Liquor Company" opened its place of business. It is claimed by Cone that Goldbaum was introduced to him by Sackmann

upon the occasion of his taking this first order, but it is not contended that defendant was then present or that he had anything to do with it. Thereafter, from time to time, further quantities of liquor were shipped to the "Cape Liquor Company" by plaintiff on Goldbaum's order, up to and including January 16, 1908, at which time the total thereof furnished by plaintiff amounted to $1130.61. Various cash payments are credited on the account, and credit is given for certain liquors returned, the total credits being $757.55, leaving a balance due of $373.06, to recover which balance this suit is brought. The total amount credited upon the account is less by $92.36 than the total invoice price of liquors sold the Cape Liquor Company by plaintiff prior to September 3, 1907, at which date plaintiff claims that the defendant and Sackmann undertook to withdraw from the alleged partnership by the agreement of that date heretofore mentioned, and of which plaintiff had no notice.

The plaintiff called the defendant, Sackmann and Goldbaum as witnesses in its behalf, as well as Adolph Graf, president of plaintiff corporation, and Robert Cone, plaintiff's salesman. It appears from the evidence that there was perhaps an original written agreement between Goldbaum, Sackmann and the defendant, but if so it was not produced at the trial, neither was the agreement of September 3, 1907. It was attempted by plaintiff to have these papers produced. It is not altogether clear that the first existed, and it was claimed that none of the three alleged partners had any copy of the last agreement. Goldbaum testified that he was unable to find his copy of it; Sackmann testified that he had destroyed his copy; and Wilson testified that he did not know what had become of his, if he ever had one.

We shall not undertake to set out the evidence in detail by which the plaintiff attempted to show that the defendant had allowed himself to be held out as a

partner in the business. There was very little testimony to this effect, beyond that of A. Graf, president of plaintiff corporation, and Robert Cone, plaintiff's salesman, much of which was incompetent, at least for this purpose. So far as the evidence tending to show an actual partnership between the three, it consisted mainly of the showing made, and which defendant admitted in testifying, that the defendant and Sackmann had indorsed Goldbaum's notes, and that they were to receive each one-third of the net profits, after the notes and running expenses had been paid.

The defendant offered no testimony and the cause was submitted to the jury upon six instructions given on behalf of the plaintiff and two on behalf of the defendant. One instruction requested by plaintiff was refused by the court. There was a verdict for the defendant, and after an unsuccessful motion for a new trial, and preserving exception to the overruling of said motion, the plaintiff has duly appealed to this court.

We may say at the outset that the evidence fell short of making out a case in which the defendant should be held liable as a partner by estoppel. The evidence fails to show that he permitted himself to be held out as a partner. On the contrary it appears that the defendant's connection with the enterprise and with Goldbaum was kept secret, and defendant in no way took part in the business or permitted his name to be used in any way in connection therewith. The testimony elicited by plaintiff for the purpose of showing that defendant had been held out as a partner utterly failed to make a case against defendant on that ground.

Learned counsel for appellant, however, earnestly insist that the evidence as a whole shows beyond question that a partnership actually existed between the defendant, Sackmann and Goldbaum, and say that the court erred in not so declaring. Upon the

question that the court should have so declared, as a
matter of law, it might be sufficient to say that appel-
lant did not take this position at the trial, but on the
contrary asked instructions submitting this issue to the
jury. A party is bound by the position which he volun-
tarily assumes at the trial, and where he treats an is-
sue as being one for the jury, he cannot afterwards
complain that such issue is so submitted, even though
it be one that might have been passed upon before the
court as a matter of law. [Ellis v. Harrison, 104 Mo.
270, 16 S. W. 198; Burkson v. Railway Co., 144 Mo.
211, 45 S. W. 1119; Dunlap v. Griffith, 146 Mo. 283,
47 S. W. 917; 3 Cyc. 249; Vromania Apartments Co.
v. Goodman, 145 Mo. App. 653, 123 S. W. 543; Dah-
mer v. Railway, 136 Mo. App. 443, 118 S. W. 496;
Cady v. Coates, 101 Mo. App. 147, 74 S. W. 424.]

And the evidence was not such as to justify the
court in declaring as a matter of law that a partner-
ship existed. So far as going to show that defend-
ant was a partner in the business, it merely showed
that the original agreement between the parties was
that he was to share in the profits, if there were profits,
in return for having indorsed Goldbaum's notes, after
the latter had been paid. So far as the evidence shows,
there was no agreement that defendant and Sackmann
were to bear any portion of the losses; and the mere
participation in profits and losses, alone, would not
necessarily make them partners in the business.
Whether in fact a partnership existed between the
parties or not depended upon their intention, to be
discovered from the contract into which they had en-
tered, and construed in the light of all the facts and
circumstances of the case.

In an early case in this court, Kelly v. Gaines, 24
Mo. App. 506, it was said: "A mere participation
in the profits and loss does not necessarily constitute
a partnership between the parties as so participat-
ing." [Citing cases.] The court then quotes from

Mr. Story as follows: "In short the true rule, *ex aequo et bono,* would seem to be that the agreement, and the intention of the parties themselves, should govern all cases. If they intended a partnership in the capital stock, or in the profits, or in both, then that the same rule should apply in favor of third persons, even if the agreement were unknown to them. And, on the other hand, if no such partnership were intended between the parties, then that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons . . ." (Story on Part. (6 Ed.), sec. 49)—saying that this had been approved by the Supreme Court, as a correct statement of the rule on this question, in Campbell v. Dent, 54 Mo. 332, in which the court, in connection with the statement of the rule by Mr. Story, said: "In order to constitute a communion of profits between the parties, which shall make them partners, the interests in the profits must be mutual; each person must have an interest in the profits as a principal trader. It is not enough that one shall receive a portion of the profits as compensation for services, but he must have some interest in the business, or property of the business, or trade, so as to give him a lien on the property for the protection of his interests or profits, and a control over the same; the single circumstance that he is to have a share of the profits, does not necessarily make one a partner so as to bind him by acts or admissions of one who carries on the business."

In Hughes v. Ewing, 162 Mo. 261, 62 S. W. 465, in which the authorities on this subject are reviewed, the court quotes the following language as the modern doctrine on this subject: "Notwithstanding these differences of opinion as to the test of mutual agency, *it is entirely clear that the old rule that sharing profits as profits made one a partner is overthrown.* It seems also to be true that the real test is that . . .

*there must be a community of interest—a joining as principals in carrying on a business for their joint profit.* This community of interest as principals in the transactions necessarily excludes . . . any other class of creditors whose interest is not in the business itself, who have no common ownership of the business, its capital or its stock in trade, who do not own the profits, if there are any, who have no voice or part in controlling the management of the business, but who are simply entitled to be paid out of the profits, if there are any, some claim or demand which they have against the real principals in the business." (The italics are ours.)

In Torbert v. Jeffrey, 161 Mo. 645, 61 S. W. 823, the court, speaking through BRACE, J., said: "Participation in the profits and losses of a joint business or undertaking affords the usual, and perhaps the most cogent test of the existence of an intention to form a partnership. An agreement for such participation is not, however, a conclusive test and does not absolutely constitute a partnership as a conclusion of law, *if other circumstances show that no partnership was intended. It is only prima facie proof which may be rebutted by evidence of other facts and circumstances."* (Italics ours.) [See, also, Diamond Creek, etc., Mining Co., v. Swope, 204 Mo. 48, 102 S. W. 561; Sawyer v. Burris, 141 Mo. App. 108, 121 S. W. 321; Mingus v. Bank, 136 Mo. App. 407, 117 S. W. 683; Bowen v. Epperson, 136 Mo. App. 571, 118 S. W. 528; Glore v. Dawson, 106 Mo. App. 107, 80 S. W. 55; Hazell v. Clark, 89 Mo. App. 78; Gilley Hardware, etc., Co. v. McCleverty, 89 Mo. App. 154; Cudahy v. Hibou, 92 Miss. 234, 18 L. R. A. (N. S.) 975, and notes; Brotherton v. Gilchrist, 144 Mich. 274; 115 Am. St. Rep. 397, and notes; 30 Cyc., p. 369, et seq.]

In the case before us, the evidence that the defendant was to participate in the profits, if there were profits, was at most but prima facie evidence of an in-

tention to form a partnership. Unquestionably other evidence in the case tended to rebut that presumption, and tended very strongly to show that the intention was not to form a partnership. We think that the plaintiff did not make out a case entitling it to have the court declare, as a matter of law, that defendant was a partner in the business, even had plaintiff assumed this position at the trial.

In Cudahy Packing Company v. Hibou, 92 Miss. 234, 18 L. R. A. 975, an agreement was entered into by the defendant, Hibou, and one Hoxie, whereby the former agreed to furnish to the latter money, goods, wares and merchandise, of the value of $4020.05, in order to enable the latter to engage in the saloon, restaurant and hotel business in Vicksburg, Mississippi. Hoxie agreed to devote his entire time to the management of the business and to repay Hibou in monthly installments, evidenced by a series of promissory notes executed by him, agreeing to pay interest thereon. It was agreed that Hoxie should draw out of the business for his own use ninety dollars per month; that the net profits of the business should be applied by him to the payment of the notes; and that Hibou should receive one-half of the net profits from the operation of the business, after all of said notes had been paid. The business was carried on under the name of "Hibou Exchange, Magruder Hoxie, Proprietor," which appeared upon the cards, letterheads, etc., of the business. As in the case before us, the business did not prosper, and Hoxie later became a bankrupt. The suit was to hold Hibou liable as a partner for the price of a bill of goods purchased by Hoxie and used in the business. Upon the question of whether Hibou was to be held as a partner, the court said: "The question is whether the agreement made establishes a partnership as between the parties themselves. If it does not, it is clear in this case that there was no partnership as to third parties. There could be no reasonable

pretense of it, certainly before the debt to Hibou was paid. There is here no holding out to the world as partners, and so to establish such relation it must appear from the agreement itself. An agreement may make a partnership by its phraseology and legal construction, regardless of intent, or even against its express repudiation of such intent. Is that the case here? If there was a partnership between Hoxie and Hibou, it must appear from this contract. From this only we are to ascertain the intent of the parties, which intent must control, unless the language makes a partnership regardless of it, or even of assertions in it to the contrary. If Hibou had a claim to the profits because of joint interest, and not merely to secure debt, there was a partnership. If, however, he was only looking to the profits of the business under Hoxie's management for payment of his debt, this does not make partnership, because in that case it remained, if finally unpaid, a personal debt from Hoxie. Division of net profits 'share and share alike' after payment of the notes, does not make a partnership *in praesenti*, even if it does *in futuro* on condition. It is not to be seen in the case before us that there was any community of interest in the stock of goods, fixtures, furniture, etc., nor any joint ownership in the business, nor that each was agent of the other. Hibou was not the owner and Hoxie his agent. . . . The text of 22 Am. & Eng. Ency. Law (2 Ed.), p. 30, is this: 'A bona fide creditor, receiving payment of his debt by instalments or otherwise out of the business, is not thereby made a partner.' And in support of it are cited authorities from fifteen States, and it has our sanction; and this is the most that can properly be said of the case in hand. See notes to 58 Am. Rep. 105, and in the case of Dubos v. Jones, 34 Fla. 539, 16 So. 392. And these notes indicate great ability and research, and are referred to now in support of all the propositions in this opinion."

That case is almost "on all fours" with the case before us. Learned counsel for appellants very ingeniously seek to draw a distinction between a case (such as Cudahy, etc., Co. v. Hibou, supra), where one who is sought to be held as a partner directly lends money to another for the conduct of the business, and a case (such as here) where he indorses notes of the other party to obtain the money so to be used. We do not, however, see that such distinction should be made. In the case before us Goldbaum was primarily liable upon the notes at the bank and remained liable for the debt in any event, regardless of whether there were profits or not. Although it was contemplated here, as in the Cudahy case, that profits from the business would be applied to the payment of the debt, and in both cases the primary debtor was unable ultimately to pay. Here, as there, the defendant was to receive no profits until after the debt was paid.

In the case before us we do not see that it would have made any essential difference had the defendant loaned the money directly to Goldbaum, taking his notes therefor, instead of indorsing the latter's notes to secure the same. Defendant's credit was pledged to secure the money. The evidence shows that he "indorsed" Goldbaum's notes, from which we must conclude that the latter was made primarily liable for the debt, and evidently remained liable therefor regardless of the outcome of the enterprise.

It is also urged that by the agreement of September 3, 1907, the parties recognized that a partnership existed, and that defendant and Sackmann thereby sought to withdraw therefrom. This does not necessarily follow. If no partnership existed by virtue of the original agreement, certainly none was created by the second. It appears that by the latter, Goldbaum agreed to do nothing more

than he had originally obligated himself to do, but the others agreed to forego any right to participate in the profits. We are not concerned with the validity of that agreement. So far as being evidence of the prior existence of a partnership, we cannot say that it has any great probative force. It may have come about because defendant and Sackmann feared that creditors would seek to hold them as partners; but, as the case was tried, this was a mere circumstance for the consideration of the jury.

The instructions given for plaintiff were quite as favorable to it as the latter could require. The instruction asked by plaintiff and refused by the court, sought to have the court declare that though the defendant and Sackmann never intended to become partners, and though it may have been agreed among defendant, Sackmann and Goldbaum that neither defendant nor Sackmann were to be partners in the business, nevertheless if by the terms of such agreement defendant was to sign notes for procuring the capital of the business, and was to share in the profits as profits, then the relation that he had thereby assumed was that of partner.

The refusal of this instruction was proper, for the reason, if for none other, that the sharing of profits, as profits, alone, does not necessarily make one a partner. Nor do we think that the case falls within that class of cases where parties have misconceived the legal effect of an agreement into which they have entered, which by its "phraseology and legal construction" creates a partnership "regardless of intent, or even against its express repudiation of such intent."

Instruction No. 5, given at the request of the defendant, after being modified by the court, is complained of. This instruction told the jury that plaintiff was required to make out its case from the greater weight of the testimony; that the fact that defendant

was to participate in the profits did not necessarily make him a partner, but that under the evidence it was a question of intention of the parties whether a partnership existed. That if the jury found there was no intention on the part of the defendant to become a partner with Goldbaum and Sackmann, but only intended to share in the profits of the business as a consideration for signing notes of Goldbaum to obtain capital for the business, then the verdict must be for the defendant, but that such intention must be determined from the contract itself, and if that fails to disclose "such partnership or that no partnership existed between the parties," then the question of intention should be determined from all the facts and circumstances as stated by the witnesses. In view of what we have said above we see no reversible error in the giving of that instruction.

As to the point made by appellant that the lower court erred in permitting leading questions to be asked the defendant, Sackmann and Goldbaum by defendant's counsel on cross-examination, it is sufficient to say that these witnesses were called by plaintiff, and were thereby made its witnesses. And while more than ordinary latitude was allowable to plaintiff in its examination of them (of which plaintiff availed itself), this did not deprive the defendant of the right to cross-examine them. On cross-examination it was not reversible error on the part of the court to permit leading questions to be asked them by defendant's counsel. The matter was one largely within the discretion of the trial court.

There was ample evidence to support the verdict; and we see no reversible error in the record. The case was well tried below, and has been very ably presented here by learned counsel on both sides. We think that the judgment was for the right party, and it is hereby affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.