EMMETT M. MYERS and GEORGE R. WENDLING, JR., Co-Partners Doing Business as MYERS & WENDLING, Appellants, v. ST. LOUIS STRUCTURAL STEEL COMPANY, a Corporation.—65 S. W. (2d) 931.

Division One, August 9, 1933.

*Bryan, Williams, Cave & McPheeters* for appellants.

*Lewis, Rice, Tucker, Allen & Chubb* for respondent.

ATWOOD, J.—Demurrer to plaintiffs' petition was sustained in the circuit court on the ground that the petition did not state facts sufficient to constitute a cause of action against defendant. Plaintiffs thereupon refusing to plead further judgment was rendered for defendant from which plaintiffs have appealed.

The petition was in three counts and sought recovery of the principal amount of $10,301.98, with interest from May 21, 1927, for insurance premiums on three certain insurance policies. Appellants state that the theory of the petition as to defendant's liability "is that the defendant was a joint or co-adventurer with the Lotz Construction Company in the construction of a substructure of a bridge over the White River at Batesville, Arkansas, and the approaches to it, and that the insurance policies were purchased by the defendant's co-adventurer in the furtherance of said construction work." Appellants further say that "the trial court in sustaining the demurrer of the defendant held that the facts pleaded did not show that the undertaking was a joint adventure between the defendant and the Lotz Construction Company."

Counsel for respondent apparently acquiesce in appellants' statement of the facts charged in the petition, which statement is substantially as follows:

(1) That defendant was engaged in the business of manufacturing and selling structural steel but was not engaged in or equipped for doing foundation and superstructure work of bridges and was not engaged in or equipped for the business of sinking and construcing piers, foundation piles and foundation work generally.

(2) That shortly before August 2, 1926, defendant made a bid to the State Highway Commission of Arkansas for the construction and erection of a bridge and approaches thereto over the White River at Batesville, Arkansas, and that on or about August 2, 1926, the bid was accepted but the formal contract was to be entered into between defendant and said Highway Commission at some other date.

(3) That after the acceptance of said Highway Commission of defendant's bid, but before they had executed the contract, defendant entered into a written contract dated August 5, 1926, with the Lotz Construction Company, a corporation engaged in foundation and substructure work, whereby the latter agreed to take over, assume and perform all of the obligations of defendant under its proposed contract with said Highway Commission, except that defendant reserved the right to perform all the work and furnish all the material in connection with the superstructure of said bridge.

(4) That by its contract with the Lotz Construction Company defendant agreed to pay to the latter for the work to be performed

by it exactly the same compensation and upon the same terms and conditions as provided in said proposed contract between defendant and the Highway Commission, and that the construction company agreed to give to the defendant a surety bond satisfactory to it in the sum of $200,000, conditioned upon the faithful performance by said construction company of its contract with defendant.

(5) That subsequently it was ascertained that said construction company could not furnish said surety bond and could not provide the necessary funds to carry the payroll and purchase supplies and materials necessary to do the work; that it so informed defendant and that a new contract was then entered into between the construction company and defendant dated October 7, 1926.

(6) That it was provided in the contract of October 7, 1926, as follows:

(a) The construction company was relieved from its obligation to deliver said surety bond.

(b) That in consideration of the furnishing by the construction company of the necessary equipment to be used in the construction of the foundation and substructure work on said bridge and of the supervision and management of the work defendant agreed to contribute to the undertaking as the work progressed such sums as might be needed, not exceeding $20,000.

(c) That defendant was to participate in the profits realized from the construction work to the extent of $6,000 as and when earned.

(d) That defendant should be entitled to exercise supervision and control over all that part of the undertaking calling for the expenditure of moneys on said work.

(e) That an employee of defendant should be present on the job and that all disbursements for labor and materials should be made through his hands.

(f) That all purchases of materials and supplies amounting to over $500 to be used in said work should, as to prices and terms, be subject to the approval of defendant.

(7) That afterwards the foundation and substructure work was begun, the Lotz Construction Company furnishing the equipment and supervising the work, defendant contributing various sums of money when needed and supervising the disbursement of such funds and passing upon and approving the prices and terms for the purchase of material and supplies as needed in the work, including all bills rendered by plaintiffs for insurance premiums.

All of the foregoing allegations were by reference incorporated and made a part of each and every count of the petition.

It is charged in count I that shortly after the changed or new contract was entered into between defendant and the Lotz Construction Company, and before the 28th day of October, 1926, plaintiffs were informed of said changed or new contract and in reliance upon it

wrote and delivered on said last date a policy of insurance, wherein it was agreed that the insurer therein would indemnify the insured against liability on account of injuries sustained by a member or members of the general public who should be injured in connection with the work being done and to be done in the construction of the foundation piers and substructure work on said bridge, and that said policy was written in the name of and delivered to the said Lotz Construction Company; that a premium was earned and became due and payable under said policy of insurance, subject to a check-up on the payroll by the insurer of the men employed on said job, as was usual and customary in the placing and writing of that kind of insurance and as was provided in said policy; that the premium which was earned and became due and payable under said policy of insurance was in the sum of $251.79; that it was charged to plaintiffs by the insurer and was by them paid to the insurer named in said policy. This count then charged that by virtue of the terms of the contract dated October 7, 1926, between defendant and the construction company they received the benefit and protection afforded by the policy of insurance and became and are liable jointly and severally for the premium.

Count II of the petition contains the same allegations with reference to the issuance and delivery of a second policy of insurance, except that the agreement in the second policy was that the insurer would indemnify the insured against any liability on account of injuries sustained by any workmen engaged in said work and except that the amount of the premium was $9,016.76.

The allegations in count III are the same as those in count I, except that it pleads the issuance and delivery of a policy of marine insurance covering barges, etc., used in connection with said work, and the premium on it was $1,033.43.

Attached to and made a part of plaintiffs' petition by reference are a copy of said original contract dated August 5, 1926, and a copy of said new contract dated October 7, 1926, the latter being in the form of a letter of that date from the Lotz Construction Company to respondent herein with respondent's acceptance duly indorsed thereon, said documents being marked "Exhibit A" and "Exhibit C," respectively. In their brief counsel for appellants refer to "Exhibit C" and state that they "have no objection to its being considered as a part of the petition and, in the interest of the time of the court and of the litigants, they hope it will be considered." Counsel for respondent state in their brief that they "assume that the plaintiffs have the same wish with respect to Exhibit A" and that they "likewise have no objection to the exhibits being considered as a part of the petition and join in the hope that the court will so consider them," to which suggestion counsel for appellants enter no objection.

■ Under our practice mere exhibits, even though attached to and made part of a petition by reference, constitute no part thereof when sufficiency of the petition is being tested by demurrer. [State ex rel. Rudder v. Haphe et al., 326 Mo. 460, 31 S. W. (2d) 788, 791; State ex rel. v. Ossing, 16 S. W. (2d) 77, 78; State ex rel. v. McQuillin, 256 Mo. 693, 707 et seq., 165 S. W. 713; Hubbard v. Slavens, 218 Mo. 598, 622, 117 S. W. 1104.] However, inasmuch as counsel for both sides apparently join in a commendable endeavor to present clearly, accurately and without reserve all facts which appellants insist constitute a cause of action in their behalf to the end that it may now be determined whether such facts are sufficient to constitute a cause of action against respondent, we shall adopt the suggestions of counsel and consider these exhibits as part of the petition in our review of the judgment rendered on the court's action in ruling defendant's demurrer thereto.

■ In their printed argument counsel for appellants say: "If the pleaded facts are not quite sufficient to show a partnership relation between the defendant and the Lotz Construction Company they very fully show that the relation between them was one of joint adventure." We are here concerned with the relationship existing between defendant and the construction company only to the extent that it determines their liability, if any, to third parties and particularly appellants. Whatever distinctions there may be between a partnership and a joint adventure we can think of none with respect to such liability. Hence, the following well-known doctrine long ago announced in Story on the Law of Partnership (6 Ed.), section 49, and quoted with approval in Campbell et al. v. Dent, 54 Mo. 325, 332; Kelly v. Gaines, 24 Mo. App. 506, 513; A. Graf Distilling Co. v. Wilson, 172 Mo. App. 612, 620, 156 S. W.. 23; and Willoughby v. Hildreth, 182 Mo. App. 80, 91, 92, 167 S. W. 639 (the latter case being cited by appellants), is applicable: ■ "In short, the true rule, *ex aequo et bono,* would seem to be that the agreement, and the intention of the parties themselves, should govern all the cases. If they intended a partnership in the capital stock, or in the profits, or in both, then that the same rule should apply in favor of third persons, even if the agreement were unknown to them. And, on the other hand, if no such partnership were intended between the parties, then that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons."

In this case there is no contention that respondent was guilty of conduct operating as fraud or deceit upon appellants. The petition alleged that plaintiffs knew of and relied upon the contract dated October 7, 1926, and the sole contention is that the facts pleaded show the relationship of co-adventurers between the parties in their

undertaking under this contract. If plaintiffs knew of and relied upon this contract they had notice of the original contract dated August 5, 1926, because it is specifically identified and referred to in the last agreement, and the matter for determination is simply the intention of the parties to the last agreement as disclosed by the petition, both agreements being treated as part thereof. Now the original contract, as disclosed by the petition and the terms of the document itself, was a typical agreement between contractor and subcontractor, the parties being so designated therein, whereby the Lotz Construction Company as subcontractor took over a part of respondent's contract at prices stipulated therein and was to give a $200,000 bond for the faithful performance of this agreement. Appellants do not claim that this transaction constituted a joint adventure and the petition as well as the agreement itself discloses a contrary intention. Was it the intention of the parties by the agreement of October 7, 1926, to change their relationship from contractor and subcontractor to that of joint or co-adventurers?

The petition pleads that the last agreement was occasioned by inability of the Lotz Construction Company to furnish the stipulated bond and to wholly finance the work. This agreement is evidenced by a letter signed and addressed by the Lotz Construction Company to respondent under date of October 7, 1926, and bearing respondent's acceptance duly endorsed thereon, copy thereof being "Exhibit C" heretofore mentioned and its contents being as follows:

"Re: Bridge over White River at Batesville, Independence County, Arkansas—Federal Aid Project, 240-A.

"Under dates of August 5th and 6th, 1926, a subcontract and agreement supplemental thereto were entered into between your Company and the Lotz Construction Company whereby the Lotz Construction Company undertook to perform certain parts of the foundation and construction work in connection with the erection of the bridge and approaches above referred to.

"Said subcontract provided for the furnishing by this Company of a bond for $200,000 and we find that this bond cannot be furnished. We also find that we shall have to have assistance in financing said subcontract as the work progresses.

"We stand ready, however, to carry out the terms of our original contract (with the exception of the giving of the bond above mentioned) if you will agree to advance to us such sums as we may from time to time require in connection with the completion of said subcontract, provided, however, that the unpaid total of such advances to be made by you shall not at any one time exceed $20,000. In order to induce you to waive the requirement of the bond mentioned and to advance the funds referred to, the following is proposed.

"1. We propose to carry out the terms of said original contract of August 5th as supplemented by letter of August 6th from the St.

Louis Structural Steel Company to the Lotz Company and in accordance with all the terms of said original contract, except for the bond provided in Section four of said contract and except as may be herein provided.

"2. We agree to put $5,000 in cash, material or supplies (exclusive of equipment) into this subcontract within thirty days from date and of that amount we agree that we will put $3,000 into this subcontract before the St. Louis Structural Steel Company shall be called upon to make any part of the advances which they are to be called upon for.

"3. We will furnish and deliver (free and clear of all encumbrances and liens) at the site of the project the necessary equipment as needed for the work under said subcontract.

"4. St. Louis Structural Steel Company is to have in its employ at our expense Mr. 'Chick' Fox of the Westlake Construction Company, who shall stay on this job and through whose hands all disbursements for labor and material shall be made. In the event Mr. Fox should not be approved as suitable by the St. Louis Structural Steel Company and because of such disapproval some one else be employed, then any excess in salary, if any, over the amount that the Lotz Construction Company would have to pay Mr. Fox shall be borne by the St. Louis Structural Steel Company.

"5. It is agreed that all purchases of materials and supplies amounting to over $500 for this job shall, as to the price and terms of such materials and supplies, be subject to the approval of the St. Louis Structural Steel Company.

"6. In the event that we call upon your Company to make any advancements to us in connection with our work under said subcontract, we shall then pay you the sum of $6,000 out of our profits on this job.

"7. St. Louis Structural Steel Company agrees, when called upon, to make the necessary advancements to us in connection with this subcontract in such amounts as we may call upon them for as contemplated herein. It is agreed, however, that the amount of such unpaid advances shall never at any time exceed $20,000 and it is further agreed that any sums received for the account of said subcontract from the State Highway Commission by the St. Louis Structural Steel Company shall be forthwith credited on any advancements then outstanding and unpaid from the St. Louis Structural Steel Company to the Lotz Construction Company and that the excess, if any, shall be immediately paid over to the Lotz Construction Company.

"8. Mr. Lotz of the Lotz Construction Company shall personally supervise the work under the subcontract and shall himself be on the job whenever his presence is required, a proper proportion of

his salary for the time spent at the job to be charged against this job as overhead.

"If this agreement is satisfactory to your Company kindly sign two of the enclosed copies and return to us. When so signed by both parties this shall constitute a supplement to said contract of August 5th and we will proceed with the work immediately upon being so requested."

Conceding that courts have not yet laid down any very certain definition of a joint adventure, but have generally been content to determine whether the facts in a particular case constitute the relationship of joint adventurers (State ex rel. Ratcliff v. Superior Court, 108 Wash. 443), counsel for appellants insist that the facts pleaded show certain well-recognized elements of the kindred relation of partnership, first of which they mention an agreement to share profits in a business.

It is true that we have recently held, in line with previous decisions, that "participation in profits, or in both profits and losses, makes a case for the jury on the issue of partnership, even though the alleged partner testifies that he was not a partner, but merely receives a share of the profits as compensation for labor performed or services rendered" (State ex rel. Jones v. Daues et al., 321 Mo. 910, 919, 13 S. W. (2d) 537), but this principle is without application where in ruling a demurrer to a petition the facts pleaded show no agreement or intention to participate in profits as such. As said in 47 Corpus Juris, pages 697, 698: "In order to constitute the associates in an enterprise partners as to third persons it is frequently stated, under the prevailing view, that they must not only participate in the profits, but must have an interest in the profits, as profits, and share them as joint owners or principals of the business, and, in conformity with this requisite of partnership, a test often applied to determine the existence of the relationship is whether the supposed partner acquired by his agreement or arrangment any control, as owner, over the profits while they remained undivided. That is to say, if the supposed partner had an interest in the undivided profits, as profits, it would indicate that he was a partner, while, on the other hand, if the arrangement in respect of the profits was simply for the purpose of determining the fund from which, or the amount to which, the supposed partner would be entitled as compensation for services, money advanced, or other benefits conferred, it would indicate that no partnership was intended or created." To like effect we have said in Campbell et al. v. Dent, 54 Mo. 325, 332, 333: "In order to constitute a communion of profits between the parties, which shall make them partners, the interest in the profits must be mutual; each person must have an interest in the profits as a principal trader. It is not enough, that one shall receive a portion of the profits as a compensation for services, but he must have some

interest in the business, or property of the business, or trade, so as to give him a lien on the property for the protection of his interests or profits, and a control over the same. The single circumstance, that he is to have a share of the profits, does not necessarily make one a partner so as to bind him by the acts or admissions of one who carries on the business.'' So runs the doctrine stated in the latter part of Section 49 of Story's Law of Partnership (6 Ed.), and we can think of no reason why it should not be applied in testing the existence of a joint adventure.

The pleading relied upon as showing this characteristic of a partnership or joint adventure is the allegation in the petition that ''it was agreed that it (defendant) should participate in the profits realized from the construction work of said foundation and substructure by receiving out of the profits realized on said work the first six thousand dollars ($6,000) thereof as and when earned.'' Looking to ''Exhibit C'' above quoted for further pleaded facts touching this alleged agreement, as we must if our acceptance of the joint suggestions of counsel that such exhibit be considered a part of the petition for the purposes of this appeal means anything, we find basis therefor in paragraph numbered 6 of the proposal set forth in said exhibit and made by the Lotz Construction Company to respondent ''to induce'' it to waive the requirement of bond mentioned in the original contract and to assist in ''financing said subcontract'' to the extent and in the manner specified in the construction company's proposal, said paragraph 6 being as follows: ''In the event that we call upon your Company to make any advancements to us in connection with our work under this subcontract, we shall then pay you the sum of $6000 out of our profits on this job.'' Respondent accepted this as well as every other feature of the proposal as made, thereby entitling the construction company to waiver of the bond and to advancements as therein specified, and the parties performed *inter sese* in accordance with this agreement. Treating ''Exhibit C'' as matter pleaded in the petition it seems clear, as might well be inferred even from the allegations of the petition apart from this exhibit, that as part of the construction company's proposal which was offered and accepted as the inducement or consideration for waiving said bond and making such advancements respondent was to receive $6000 out of the construction company's ''profits on this job.'' Neither paragraph 6 nor any other part of the contract gave respondent any interest in or control as owner over the construction company's profits as such. Profits were simply designated as the fund out of which respondent's compensation of $6000 would be paid, payment in whole or in part being contingent upon the realization of profits. Therefore, the facts pleaded with reference to this feature of the agreement do not show the participation by the parties in the

profits on the job that is essential to a partnership or a joint adventure.

Counsel for respondent also contend that allegations of the petition to the effect that defendant was to exercise supervision and control over all the expenditures on said work, that all disbursements for labor and materials should be made through an agent of defendant, and that all purchases of materials and supplies amounting to over $500 were required to have the approval of defendant as to prices and terms, show such mutual participation in the management and control of the business as characterizes the relationship of partners or co-adventurers.

We think these allegations must be considered with other facts alleged in the petition or shown by the contract itself. Viewing the pleading thus broadly it definitely appears that the Lotz Construction Company was to carry out all the terms of the original contract of August 5, 1926, except furnishing bond and wholly "financing said subcontract." This necessarily included furnishing the equipment and supervising and managing the work. It also appears that respondent was to waive the bond and assist "in financing said subcontract" as the work progressed by making "the necessary advancements" to the Lotz Construction Company "in connection with this subcontract" in the amounts called for, "the amount of such unpaid advances" never at any time to exceed $20,000, it being "further agreed that any sums received for the account of said subcontract from the State Highway Commission by the St. Louis Structural Steel Company shall be forthwith credited on any advancements then outstanding and unpaid from the St. Louis Structural Steel Company to the Lotz Construction Company and that the excess, if any, shall be immediately paid over to the Lotz Construction Company."

So, it cannot be said from the pleading viewed as a whole that respondent was to make any contribution to the capital funds of the business. Its only financial obligation was to make the specified advances for which it should be reimbursed out of "any sums received for the account of said subcontract" by it. The financial assistance to be rendered was obviously in the nature of loans for the repayment of which careful provision was made in the contract. The further provisions for respondent's supervision of purchases, expenditures and disbursements are merely such as are commonly agreed to pending repayment of funds lent in the progress of construction work, and absence of a surety bond for the faithful performance of the work where the lender was also the principal contractor would make such precautions even more imperative. Ordinary business prudence would suggest such in case a contractor would waive his subcontractor's bond and lend him money to complete the subcontract. The supervision vested in respondent was obviously in

the exercise of such caution and not for the purpose of asserting an interest in and control of the business as such.

Furthermore, it appears from the contract pleaded that the parties thereto had no thought of changing their original relation of contractor and subcontractor, clearly evidenced by their original contract of August 5, 1926, because time and again in the last contract the undertaking is referred to as "said subcontract." The work is treated throughout as the business and undertaking solely of the Lotz Construction Company, and the last contract expressly provides that it "shall constitute a supplement to said contract of August 5th." Indeed, we think the facts pleaded considered as a whole clearly show an intention and agreement of the parties to the contract in question not to enter into the relation of partners or joint adventurers but to continue their original relation of contractor and subcontractor in the undertaking, and none of the facts pleaded appear to be inconsistent therewith.

It is suggested in behalf of appellants that if the advancements made by respondent were loans and not contributions made to capital funds then payment of $6,000 for use of the advancements specified for the time indicated would amount to usury, it being appellants contention that this compensation was only for the use of advancements called for and made. Respondent, on the other hand, insists that this contingent compensation was for the risk incurred by dispensing with the $200,000 surety bond as well as for the advancements made. We deem it unnecessary to rule the question thus raised because the pleaded matters above adverted to clearly show that it was not the agreement or intention of the parties to enter into the relation of partners or joint adventurers. The legality of respondent's compensation is a matter of no concern to appellants in this proceeding, and the presumption of lawful action, ordinarily indulged, could not alter the intended and agreed relationship of the actors each to the other clearly shown by the facts pleaded.

Counsel for appellants cite Alderton v. Williams, 139 Mich. 296, as a case having "fewer of the elements or incidents of joint adventure" and yet held to present that relationship. The facts in that case are briefly stated in the opinion as follows: "Defendants, as owners of a heading mill in the village of Beaverton, Gladwin County, Michigan, agreed with plaintiff to remodel said mill into a stavemill, and to carry on the business of manufacturing and selling staves; to establish and conduct in connection therewith a general store; to buy the merchandise for this store, 'as far as they reasonably could do,' at a grocery run by plaintiff in Saginaw under the firm name of George A. Alderton & Co.; to carry on said stave business 'so long as they could get sufficient timber for that purpose in the locality of said mill;' and to make repayment of plaintiff's advances by giving him ten per cent of the net profits of said business.

In consideration of these agreements made by defendants, plaintiff agreed to advance from time to time the sum of $20,000, to be repaid as aforesaid. That defendants changed their heading mill into a stavemill, and performed their other agreements. That plaintiff, after advancing the $5,000 involved in suit, refused to make further advances, in consequence of which the venture utterly failed, to defendants' damage.'' Plaintiff sued for the $5,000 advanced and was denied recovery. He hazarded return of money so advanced upon ten per cent of the net profits of the business thereby acquiring an interest in the undivided net profits as such. The money advanced was obviously not a loan but a contribution to or investment in the business staked upon ten per cent of the net profits, if any. If there were no profits, as subsequent events proved, the money so advanced was plaintiff's loss and the court properly so held. In the instant case return of moneys advanced was in nowise dependent upon net profits on the subcontract. They were subjected to no such hazards but were to be repaid out of specific funds coming into the hands of the principal contractor before any of these funds were paid over to the subcontractor. Moreover, it does not appear that the agreement in the Alderton case contained any such provisions and references as appear in the contracts pleaded in this case showing an agreement and intention of the parties inconsistent with the relationship of joint adventurers.

Another case cited in the same vein is Nelson v. Lindsey, 162 N. W. (Iowa) 3. One, Gray, was engaged in the automobile business. Having little available capital he obtained from one, Florine, $2,000 and at the same time the following writing was signed: ''In consideration of $2,000 to be invested by L. Florine of Cleghorn, Iowa, with E. E. Gray of Council Bluffs, Iowa, in a wholesale automobile business; that E. E. Gray is to give Mr. Florine's son, Philip the best instructions he can in a business way and also to pay him a nominal salary as E. E. Gray would feel justified in paying him without consideration of the amount of money invested. That in consideration of the said $2,000 Mr. Florine is to draw one-eighth net profits derived from the business, to be computed at the end of each fiscal year, beginning with September 1, 1913.'' Subsequently other amounts were borrowed by Gray from Florine and notes were executed therefor. When the total amounts advanced reached $8,000 Florine sued Gray and a writ of attachment was levied upon all automobiles in his possession at that time. Plaintiff's claim was founded on an alleged sale of an automobile to him by Gray previous to Florine's suit and attachment. The trial court instructed the jury that the writing above set forth purported on its face to create in Florine an interest in the business to such an extent that he would be charged with notice of the sale, if any, made by Gray to plaintiff,

478

and plaintiff rightly prevailed. Controlling distinctions between this and the instant case are obvious.

We have carefully examined the other cases cited by appellants and find no occasion to criticize the legal principles stated, but deem them inapplicable under the facts pleaded in this case. Defendant's demurrer was properly ruled and the judgment is affirmed. All concur.